CHANCERY.                    **Brothers *vs* Porter, *et al.***

*Case* 24.            APPEAL FROM THE MONTGOMERY CIRCUIT.

*Frauds and perjuries.   Resulting trusts.   Estoppal.*

*Oct.* 6.    CHIEF JUSTICE EWING delivered the opinion of the Court.—Judge
BRECK did not sit in this case.

The case stated
and decree of the
Circuit Court.
PETER HON sold, by executory contract, a tract of 471½ acres of land, to Porter, Dougherty and Davenport, and gave his bond to convey, by *quit claim* deed. Porter afterwards purchased out the interest of Dougherty, and he and Davenport sold, by executory contract, the same land to Hulan, McMillan and Guerrant, and bound themselves to convey, when the last payment was made, "by the same kind of title that Peter Hon was to make to them, or cause said Hon to convey." Hulan [sold his interest to Brothers, for $1,700 profit, and by separate article between them, assigned to Brothers his interest in the bond on Porter and Davenport, and Brothers executed his notes to Porter and Davenport, for the instalments payable by Hulan, substituting his notes in the place of Hulan's, and executed to Hulan his note for the profit. A judgment being recovered by Porter and Davenport against Brothers, for a balance due upon his note for the second instalment, Brothers filed his bill, enjoining the judgment, charging fraud on Hulan and Porter in the representation of good title, and ability to convey the 245 acres which he purchased, &c.

The Circuit Court, upon the hearing, dissolved the contract between Hulan and Brothers, but dissolved his injunction without damages, and dismissed his bill without costs as to Porter. Brothers has appealed to this Court, and Hulan and Porter have each filed cross errors, the former complaining of the dissolution of his contract, and the latter that damages and costs were not decreed him.

The assignor of
a bond for title
to land, is not
responsible for
the title, with-
There is no plausible pretext for the dissolution of the contract on the score of fraud. No fraudulent representations were made as to the character or terms of Porter and Davenport's bond, and there is good reason to be-

lieve, that Brothers was apprized of its import, as well as the nature of the title that was to be made by Hon, before the contract was consummated, and if he was not, he had the opportunity afforded him, to look into and ascertain its terms. He took the assignment of the bond, without false representation or fraudulent concealment, and must abide by the terms of his contract.

It is true that Hulan specifies on the face of his contract, that there was an agreement between him and his co-purchasers from Porter and Davenport, that he was to have 245 acres of the land to lie in a certain place, [and there being no such agreement on the face of the bond, or otherwise reduced to writing, and Guerrant and McMillan having relied on the statute of frauds and perjuries, in their answer to Brothers' bill, it is insisted that Brothers cannot coerce a conveyance for more than an undivided one third of the land, the bond from Porter to them being *joint.* Though the bond for a conveyance is joint, it was well understood, and agreed on between Hulan and his co-vendees, that Hulan was to have 245 acres in the purchase, to lie as is described in his sale to Brothers, which was sanctioned by Porter and Davenport, and at the time of the execution of the joint bond, and as a part of the same contract, the separate notes of Hulan were taken for that quantity of the land, and the joint notes of McMillan and Guerrant taken for the residue.

It is strenuously urged by the counsel for Brothers, that the statute of frauds and perjuries, relied on by McMillan and Guerrant, opposes an insuperable barrier to an enforcement of a conveyance of the 245 acres purchased by Brothers. Had the money assumed to be paid by each of the purchasers from Porter and Davenport, been paid down, and a *joint deed* executed to them, there can be no doubt, at this day, that a trust would result to each in the land *pro tanto* with the amount paid by each. It was asserted by the dictum of Lord Hardwicke, in the case of *Crop* vs *Norton.* (2 *Alk.* 74,) that a trust would result to a person who paid the *"whole purchase money,"* but that he never knew it to be so where the consideration moved from *several persons.* But this dictum has been overruled by later decisions. In the case *Dyer* vs *Dyer,* (2

out he is guilty of fraud in the sale thereof.

Where land is purchased by several, and joint deed received, a trust results in favor of each to the extent of the consideration pd by each.

*Cox,* 93, *Law Lib.* 21, 169, *side page,*) Lord Chief Baron Eyre uses the following language : "It is the clear result of all the cases, without a single exception, that the trust of the legal estate, whether taken in the names of the purchaser and others jointly, or in the names of others, without that of the purchaser, or in one name or several, whether jointly or successive, results to the man who advances the purchase money." And Chancellor Kent, says in the case of *Botsford* vs *Burr,* (2 *Johnson's Chy. Rep.*) in reference to the case of *Crop* vs *Norton, supra,* "I doubt whether this case is to be understood to apply, and it *cannot be received* as correct, when only a single individual claims the benefit of the trust; for the cases recognize the trust when the money of A. formed only *a part* of the consideration of the land purchased in the name of B. The land in such case, is to be charged *pro tanto.*" And in support of this position, the cases of *Ryel* vs *Ryel,* (1 *Atk.* 59 ; *Amb.* 413;) *Bartlett* vs *Pickergill,* (4 *East.* 577, *note;*) *Lane* vs *Deghton,* (*Amb.* 409;) *Wray* vs *Steel,* (2 *Ves. and Beames,* 388,) are cited.

If money paid in part or in whole, of the consideration, may be followed into the land, or a trust will result in favor of the person paying *pro tanto,* when a deed is made, and whether such deed is made to the person so paying *jointly* with others, or separately to another, the question arises if the sale be made on a credit, and a *joint* bond be executed for a conveyance on the payment of the purchase money, and the amount to be paid by each agreed on by the contracting parties, and separate notes executed to the vendor for the amount to be paid by each, at the same time the joint bond is given, as in the case under consideration, whether an *equitable trust* does not arise in favor of each, *pro tanto* with the consideration promised to be paid by each, which the Chancellor, upon the full payment, would specifically enforce, in enforcing the conveyance from the vendors? It is strenuously urged that the bond being a *joint contract* for a conveyance, precludes the idea of a trust, other than that stipulated in its terms, and to allow proof *aliunde* and in parol, to set up and establish any other trust than a *joint trust* to all the purchasers equally, would be in the teeth of the stat-

ate of frauds and perjuries. It might be a question whether the notes executed at the same time for the consideration, and received by Porter and Davenport as such, stipulating the amount to be paid by each, should not be regarded as a part and parcel of the same contract, and control the trust in favor of each for an equivalent interest in the land. And had the notes specified upon their face, that they were given in consideration of the purchase, we could not doubt that they should be regarded and taken as a part of the contract of sale, and control the trust accordingly. In that case, there would be no necessity for the introduction of any parol proof. But should the notes, (which are not exhibited in this record) not specify upon their face, the consideration for which they were given, we are still inclined to the opinion, that a Chancellor in the enforcement of the contract, without infringing the provisions of the statute, might look into and hear proof as to the amount of consideration paid, on the prior several undertaking of each, made at the same time, when the bond was executed, and enforce the trust accordingly.

It is conceded that if there were a *contract* between the parties *declaring* the trust, that no parol proof could be received adding to it, or varying its terms. And so if there were a contract in *parol* or in *writing, designating* the trust intended, upon the execution of a deed in the name of one person, when the consideration is paid by another, such contract or declaration of trust would rebut the trust which would otherwise result in favor of the person paying the consideration. But neither the mere execution of the deed *jointly*, to several, including the person who paid the consideration, nor the mere execution of a deed *jointly* to several, when each paid unequal parts of the consideration, would amount to such a *contract* between the vendees or declaration of trust, as would prevent each, in the absence of circumstances indicating a contrary intention, from following the amount so paid by him, into the land conveyed, upon the parol proof of the fact of payment. And we cannot well perceive why the mere execution of a *joint* bond for a conveyance to several, is such *contract* or *declaration of trust* between

*Where there exists a written contract declaring a trust, parol proof cannot be admitted to add to or vary the trust declared.*

*—But the mere execution of a deed jointly to several, including him who pays the consideration, nor to several where they paid unequal portions of the price, will not prevent the Chancellor from following the amount paid by each into the land, upon parol proof of payment. The same principle applies*

*where a bond is given for a conveyance but none actually made.*

the vendees, as will preclude either from setting up and enforcing in equity, his equitable trust upon the proof of his obligation and payment by the agreement of the parties, in the original purchase, of a larger amount of the consideration than his joint vendees.

This is not a *contract* for the *sale* of lands *between* the *vendees*, but a contract for the purchase of land from Porter and Davenport. And though the bond is executed to the purchasers *jointly*, by which Porter, &c. are bound to convey to them *jointly*, upon the payment of the consideration, the bond does not declare that the equitable trust in favor of all, is to be equal, nor that a trust is to result to all equally, when upon payment, the deed is made *jointly* to all. It is true that an implication arises from the *joint* bond, that each of the vendees has a joint and equal trust in the land purchased, so the same implication arises from a joint deed, but as the implication may be repelled and explained by proof of the payment of the consideration, so it seems to us that it may be repelled and explained by the proof of the obligation to pay.

Our statute, as we are inclined to believe, was no more intended to restrict equitable trusts between joint executory purchasers, based upon the promise and payment of unequal portions of the consideration, than it was intended to restrict the trust which would result in favor of each, upon an executed contract or deed, according to the amount paid.

*The statute of frauds and perjuries was not intended to restrict equitable trusts between joint executory purchasers, based upon promises and payment of unequal parts of the consideration.*

It is true that the saving in the English statute, as to resulting trusts, applies to trusts which resulted or sprang out of executed contracts or *conveyances*. But even in the construction of their statute, it has been said by high authority, that the saving was engrafted out of abundant caution, and that the statute without the saving, would not have applied to such trusts. And our statute, without any such saving, has never been construed to apply to or restrict the enforcement of such trusts. And if the statute without any such saving, would allow a vendee upon the proof of payment of the consideration by parol, to follow the money paid into the land upon an executed contract of sale, we can perceive no provision in the statute, or principle of reason, which would restrict a vendee in an

executory contract of purchase, from following, upon parol proof of the assumpsit and subsequent payment, the money so paid into the land, in the enforcement of the conveyance, or even after the conveyance, in enforcing his equitable trust against his joint vendees *pro tanto.* It would seem to be passing strange, if a resulting trust could be set up against a *joint deed,* yet an equitable trust could not be set up against a prior *joint bond* for a conveyance, when there is nothing in the language of our statute which can be construed as applying to or excepting from its operation the one class of trusts more than the other. And equally strange if a trust would arise on the execution of a deed, yet if a bond happened to be executed before the deed, though the bond contains no declaration or stipulation of the trust, other than the deed when made would contain, that such bond would preclude the vendees, before or after the deed is made, from proving and asserting their equitable or resulting trust, based upon the consideration paid in pursuance of a prior express agreement between the parties.

A trust fund which has been applied by a fiduciary, in the purchase of land, may be followed by the *cestui que trust,* into the land purchased, and that too, there can be no doubt whether the contract of purchase be executed or executory. And why? Because the equity in either case, has not been regarded as controlled or restricted by the statute. And why may not the advancement of money on an executory purchase of land on a prior agreement to pay, be followed by the person making the advancement, into the land purchased.

*A trust fund applied by a fiduciary in the purchase of land, may be followed by the cestui que trust, into the land purchased, whether the contract be executed or executory.*

We have examined with attention, the cases of *St. John* vs *Benedict,* (6 *John. Chy. Rep.* 116;) and *White* vs *Carpenter,* (2 *Paige's Chy. Rep.* 217;) and *Rogers* vs *Murry,* (3 *Paige's Rep.* 398;) and *Leggett* vs *Dubois,* (5 *Paige's Rep.* 117,) to which we have been referred by the learned counsel, and think the facts of each of those cases are different from the one before us. In the case of *St. John* vs *Benedict,* there seems to have been a surrender of the *contract* which Thayer held on the agent of the Pulteney estate for the lot in question, and by his *request* a *written contract* was made by the agent with Herrington,

containing the substituted *arrangement* of the parties. No resulting trust, which is an equitable implication only, could arise against the surrender and substituted stipulations in writing, of the parties. And though in the other cases referred to, we cannot, in some particulars, concur with the positions assumed and principles announced by the Court in all the opinions delivered; the facts in each case were essentially different from the facts in the case before us, and might have justified the conclusion at which the Court arrived.

Where there was a joint purchase of land by several by executory contract, and an agreement to pay unequal parts they are entitled to a division according to the amount promised and paid by each, and the Chancellor will enforce a parol division made by the parties in furtherance of this object, where possession was acquired and occupancy held under it.

Upon the whole, we incline to the opinion that upon the payment of the consideration by each vendee according to their separate undertakings, that Porter and Davenport would hold the land in trust for the use of each, according to the amount of consideration paid by each, and that a Court of Equity in alloting separate parcels to each, would feel bound to regard, and would regard the parol division made among themselves, and the possession acquired and occupancy held under it by each; and consequently would allot and require a conveyance to be made to Hulan, or to Brothers his assignee, for the 245 acres which he was to receive. And if the consideration was paid by each according to their several obligations, and Porter and Davenport should convey jointly to the three joint purchasers, according to his bond, that they would hold the land in trust for the benefit of each other, according the quantity paid for by each, and the allotment would be made among them as above stated.

But waiving this view of the subject, and even conceding that it is untenable, there is another ground exhibited by the facts in this record, that will ever preclude and estop Guerrant and McMillan from taking shelter under the statute of frauds and perjuries, to defeat Brothers' purchase of the specific 245 acres claimed to have been purchased from Hulan. They were well apprised of the claim of Hulan and also of Brothers' intended purchase of the 245 acres in a particular locality, and one or both of them were present, according to the testimony of Bonta, the surveyor, before the bargain was completed, when they went upon the ground to survey and lay off the same, with a view to the purchase, and were present

when the survey was made and the boundaries designated, and afterwards had the residue, which they were to get, in the agreed division of the land, surveyed and laid off to themselves, and took possession thereof without objection or complaint as to the boundaries or allotment; but with a perfect acquiescence in the same, permitted Brothers to go on and complete his purchase, and to enter upon and take possession, and parcel out and give and sell portions of it to his sons, who entered upon, occupied, and improved the same, with their privity and acquiescence, while they entered upon, occupied, and improved the parcel alloted to themselves; and each párty went on to make payments on the notes executed by each. Under these circumstances, to allow them to rely upon the statute to defeat Brothers' purchase, would be to allow them to practice a palpable fraud upon his rights. And it has often been said, that the statute was made to prevent frauds and not to shield and cover over a fraudulent transaction.

It was aptly said by the Master of the Rolls in Sir John Peache's case, (*Sugden's Law of Vendors,* 446,) "that frauds were out of the statute of frauds, for that the Judges had resolved that it was absurd that a statute, which was made to prevent frauds, should be made a handle to support them." Though this Court has not carried this doctrine to the extent that it has been carried by the English Courts, yet Guarrant and McMillan having stood by, and by their acquiescence in the division, permitted Brothers to go on and complete his purchase of the 245 acres, enter upon and dispose of parcels thereof, and make improvements by himself or others, and payments on his purchase, cannot now be permitted, by relying on the statute, if even they could be otherwise permitted to do so, to defeat his purchase, as made for the entire 245 acres.

One who stands by and permits another to purchase land to which he sets up title, will be estopped to assert such title afterwards against the purchaser.

Nor would Porter and Davenport, upon the payment of the consideration for the 245 acres, be permitted to enforce their lien upon that parcel of the land, for the payment of the consideration assumed by Guarrant and McMillan for the residue, as they were apprised of the terms and conditions of the purchase, and took the notes

of each accordingly, and also surrendered Hulan's notes and took the substituted notes of Brothers for his purchase. There can exist, therefore, no obstruction to the title on this score. And as to the objection of defect of title or inability to convey by Porter and Davenport, there is still less ground for a dissolution of the contract. Peter Hon was bound to convey to Porter and Davenport, by *quit claim* deed only, and they were bound to convey "by the same kind of title to Hulan, &c., or to cause Hon to convey." It may, therefore, be well questioned whether they were bound to convey or pass any other title, legal or equitable, than that which was held by Peter Hon when he sold to them. It is certain that remote contingent interests or claims for dower, which might or might not ever be set up or asserted, apart from fraud, could form no obstruction to a compliance with the terms of a covenant to convey by such a deed. And taking into consideration the length of, and uninterrupted continuance of the possession of Hon and those from whom he derived title, connected with the claim of title exhibited, it might be well questioned, if the bond was for a conveyance by general warranty, whether the contract should be dissolved. From the view we have taken of the case, it follows that there was no ground for the institution of the suit or the obtainment of the injunction. Brothers had no right to a conveyance until he had paid the last instalment of the consideration. And though Wilson and wife conveyed to Hon as to a part of the land, a short time after the suit was brought, and Hon conveyed to Porter and Davenport, Hon held Wilson's bond for a conveyance long previously, and he was at all times willing to convey, and Hon was at all times willing and able to perfect his title and convey to Porter and Davenport, so soon as the consideration was paid to him by Brothers, whose note to Porter, &c. for the first instalment of his purchase had been assigned to him. Brothers had no right to a conveyance when he filed his bill, nor does it otherwise appear than that he could, at any time, have obtained his title upon the payment of the consideration.

The decree of the Circuit Court is, therefore, reversed on the cross errors, and cause remanded that the com-

plainant's bill may be dismissed and injunction dissolved with damages and costs, and that Porter and Davenport may be permitted, if they desire it, to proceed to enforce their lien for the payment of the residue of the consideration upon their cross bill, it being understood, however, that they shall be restricted in the enforcement of the same, to the 245 acres purchased by Brothers, for the residue due from him, and to the residue of the land for the amount due and unpaid by Guerrant and McMillan.

*Crittenden, Morehead & Reed, Hazlerigg and Daniel* for appell ant: *Hanson. Peters, and Apperson* for appellees.