## EVANS vs. BATTLE, et als.

1. If the allegations of the bill do not correspond with the evidence, no decree can be rendered in favor of the complainant, although the proof may show that he is entitled to equitable relief.

2. A court of equity will not specifically enforce a parol gift of land.

3. But when the donee has taken possession of the land under the parol gift, and made improvements thereon, equity will not allow the donor to reclaim the possession, without making compensation to the donee for the improvements.

ERROR to the Chancery Court of Wilcox. Tried before the Hon. J. W. Lesesne.

THE allegations of the bill, so far as they are material to the questions of law raised in this case, may be thus stated: The complainant became the security of Harris Smith Evans upon a note to Sanford Cooley, for $1,127 59, due at twelve months from date, and also became the joint security with said Harris Smith Evans for one Ellison, on a note of $2,000. The complainant has been compelled to pay the note to Cooley, and said Ellison being insolvent, he has compromised that debt, paying some $700 to obtain his discharge. Before, however, these payments were made, Harris Smith Evans had died, and his estate had been reported insolvent, and the assets fully administered. The bill further alleges that Thomas Evans, the father of Harris Smith Evans, some time in the year 1831, did give the

lands in controversy to the said Harris Smith Evans, and executed an instrument in writing evincing the absolute and unqualified character of the gift; that Harris Smith Evans took possession of said lands, cleared a plantation upon it, erected a dwelling and other buildings, and made other valuable improvements upon the land; that he occupied and cultivated it until his death, which happened in 1839. Thomas Evans, the father, died before Harris Smith Evans, the son, and after the death of the latter, who died unmarried, without children, the administrator of the father applied to the Orphans' Court, and obtained an order to sell said lands as property belonging to the estate of Thomas Evans. A decree of sale was obtained, and the lands sold as the lands of Thomas Evans, and were purchased by James Battle on account of himself and George M. Rives, who were merchants and partners residing in the city of Mobile. Battle and Rives had both married the daughters of Thomas Evans, and were intimate with both Thomas Evans, the father, and Harris Smith Evans, the son. The bill also alleges that said Battle and the brothers of Harris Smith Evans had access to his papers after his death, and that they had suppressed and destroyed the deed or instrument in writing evincing the gift of the lands from the father to the son. The bill prays that the sale of the lands to Battle, under the decree of the Orphans' Court, be declared fraudulent, and that the land be decreed to be sold as the property of Harris Smith Evans for the purpose of paying the complainants' demand, and concludes with a prayer for general relief.

The answers, in conjunction with the evidence, establish these facts: The lands were purchased by Thomas Evans and the titles were taken in his name, but that Harris Smith Evans entered into possession of them in 1831, made valuable improvements and occupied them until his death. During the life of Thomas Evans, he frequently spoke of the lands as the lands of his son, Harris Smith Evans, but never executed any deed to him, nor any instrument in writing, as evidence of the gift. Thomas Evans died greatly embarrassed, and the lands were sold as belonging to him, for the purpose of paying his debts, no objection being then made to the sale by the administrator of Harris Smith Evans or any one else. But Battle knew that Harris Smith Evans had occupied and improved the lands at the

time he made the purchase, and it was admitted that Thomas Evans had paid for and on account of his son, Harris Smith Evans, the sum of fifteen thousand dollars, as alleged in the answers.

T. WILLIAMS, for plaintiff in error :

This case presents only two questions : 1. Is a parol gift of lands from a father to his son within the statute of frauds in this State, when at the time of the gift the son takes possession with the knowledge and consent of the father, and clears land, builds houses, and completes other improvements exceeding in amount the value of the land; which possession or improvements are not disturbed or interfered with by the father up to his death, including a period of seven years? Damage to the promisee constitutes as good a consideration as benefit to the promissor.—2 Pet. 182; 2 Bibb 30; 2 J. J. Marshall, 222; ib. 120. The removal of a son-in-law from the county in which he resides, at the request of his father-in-law, and settling here, is a valid consideration for a deed of conveyance.—Lit. Select Cases, 30. A father promised his daughter that if she would come and live with him she should have his estate. He afterwards drove her off and willed his estate to another. It was held that she was entitled to the estate.—Gray v. James, 4 Dess. 185. A slight consideration will support an agreement made by a parent with his child, but the consideration, however slight, must be performed.—Simmons v. Hill, 4 H. & McH. 252.

In the following cases parol gifts of lands from father to son, where the son went into possession and made valuable improvements, have been supported : Young v. Glendening, 6 Watts 509; Syler v. Eckhart, 1 Bin. 378; Worcester v. Eaton, 13 Mass. 371. The cases in 1 Leigh 36, and 2 ib. 569, differ from the cases above cited in this, that in neither of them were any improvements made, or any loss sustained. In view of all these authorities, it is respectfully submitted, that the decision in Forward et al. v. Armstead, (12 Ala. 124,) cannot be supported.

2. If the parol gift cannot be sustained, is the son entitled to compensation for the value of his improvements? The case of Evans v. Evans, (8 B. Mon. 566,) is a direct authority in favor of the claim for compensation. It is objected that Thomas Evans had paid for his son an amount of money largely exceeding

the value of these improvements. But we insist that we are at least entitled to an account to ascertain on which side the balance is.

It is also objected that the bill alleges a deed as the foundation of the relief prayed, and therefore we cannot set up a claim under a parol gift. To this we answer, that the material allegation of the bill is that the land belonged to the son, and it is immaterial whether he held by parol gift, deed or patent. If the objection would have any force against a bill filed by the son himself, it ought not to prevail in this case, where the bill is filed by a creditor, who cannot be presumed to know the exact nature of the title.

JOHN A. CAMPBELL, contra :

1. The allegations of the bill are not sustained by proof. There is no proof whatever of the written instrument on which the suit is founded. The plaintiff cannot recover upon a case not made by his bill.—5 Port. 9 ; 1 Ala. 330.

2. The suit is improperly brought. It should be brought by the representatives of H. S. Evans, or, if they refused to proceed, then by those creditors who have established their claims against his estate.—1 Hill's Ch. R. (S. C.) 297 ; 3 Barb. Ch. R. 427 ; 2 ib. 35 ; 11 Sm. & M. 369 ; 12 ib. 547 ; 3 Por. 470.

3. A court of equity will not enforce an incomplete gift. The case of Forward v. Armstead, (12 Ala. 124,) must be decisive of this. See also 6 Ves., jr., 662 ; 12 ib. 39 ; 4 M. & C. 647 ; 1 Craig & Phil. 138 ; 1 Beav. 140.

4. The complainant is not entitled to compensation in this suit for valuable improvements made by the son. 1. Because that is not the object of this suit, and the claim is inconsistent with the allegations of the bill.—6 Rand. 658. 2. The evidence shows that Thomas Evans paid at least $15,000 for his son, which is more than the value of the improvements.

DARGAN, C. J.—The complainant has wholly failed to prove that Thomas Evans, the father, ever executed a deed of gift for the lands in controversy, or any instrument in writing, evincing a gift from him to his son, Harris Smith Evans. This defect of proof would probably be fatal to the bill independent

of all other objections ; for however clear the proof may be, to show that the complainant is entitled to equitable relief, yet, if his allegations do not correspond with his evidence, no decree can be rendered for him.   Proof alone will not entitle a party to relief, but it requires both allegations and proof, and they must correspond.—Clements, Adm'r. v. Kellogg, 1 Ala. 330; Goodwin v. Lyon, 4 Por. 297; Morgan v. Crabb, 3 Por. 470; Dunn v. Walker & Parsons, 5 ib. 345.   But independent of this objection, and assuming that the allegations of the bill are applicable to the evidence, I cannot doubt but that the chancellor correctly dismissed the bill.   The only pretence of title in Harris Smith Evans, as shown by the evidence, can amount only to this, that Thomas Evans, the father, made a parol gift of the lands to his son, who took possession and made valuable improvements upon them.   Before we can decree the lands, therefore, to be sold as the property of the son, we must specifically execute the gift from the father to the son, which beyond doubt, was voluntary and without consideration moving to the father at the time it was made.   In the case of Antrobus v. Smith, (12 Ves. 39) the Master of the Rolls put the question to the counsel, do you recollect any instance in which a party was compelled to perfect a gift even in favor of a child ?   The reply was, that the relief sought in that case did not require any act to be done in order to perfect it.   In the decree that was rendered it appearing that the gift was not complete, the relief sought was refused.   In the case of Ellison v. Ellison, (6 Ves. 656,) the distinction as to volunteers was taken, and it was held that the assistance of the court could not be had without a consideration to constitute one a *cestui que trust*, but if the act of the parties was complete, and the legal title absolutely conveyed, though without consideration, then a court of equity would enforce the trust.   In the case of Jeffreys v. Jeffreys, (1 Craig & Phil. 138 and 141,) a father, by voluntary settlement, conveyed certain freehold, and covenanted to surrender certain copyhold estates to trustees, in trust for his daughter.   He afterwards devised a part of the same lands to his wife, who, after the death of the testator, was admitted to the copyhold estates.   A bill was filed by the daughter to have the trusts executed, and to compel the widow to surrender the copyhold estate to which she had been admitted. The chancellor said that the title of the plaintiff to the freehold

was complete; and a decree, so far as the freehold was concerned, was rendered, carrying into execution the trusts; but in respect to the copyhold which the father had covenanted to surrender to the use of his daughter, the chancellor said, "I have no doubt that the court will not execute a voluntary contract, and my impression is, that the principle is the same, whether the complainant seeks the benefit of a contract, a covenant, or a settlement." He, however, held up the decision to examine the case of Ellis v. Nimmo, which had been pressed in the argument, but on a subsequent day he said he saw no reason to change his opinion.

I take it to be the settled law that if the gift is complete, and the donor has parted with the legal title, that a court of equity will then execute the trust, because the relation of trustee and *cestui que trust* is established by the act of the donor. But if the gift is not complete, if the legal title still remains with the donor, and it requires another act to be done in order to establish the relation of trustee and *cestui que trust*, or to divest the donor of the legal title, a court of equity will never do that act, or compel it to be done, without a consideration. The case of Forward v. Armstead, (12 Ala. 124,) is very analagous to the case now before us. There a father residing in Alabama wrote to his son, residing at the time in North Carolina, that if he would remove to this State, he would give him certain lands and slaves. The bill alleged that the son, confiding in the promise of the father, did break up and remove to this State at great loss and expense, and that his father, in part performance of his promise, had put him in possession of the land and slaves, and that he had opened a plantation and made valuable improvements on the land. This court, waiving the consideration of the right of the son to compensation for the improvements, held, that the promise of the father, being merely voluntary, could not be specifically enforced by a court of equity. We think this case is in conformity with the settled rules of law, and is conclusive to show that the lands in the present case could not be treated as the estate of Harris Smith Evans, and as such decreed to be sold in payment of his debts.

But it is contended that Harris Smith Evans was entitled to compensation for the improvements made upon the land under the circumstances disclosed by the proof, which should be charged

upon the land, that therefore the cause should have been refer-red to the register to take an account of the value of the improvements, and from the amount that might be ascertained to be due to him the complainant's debt should have been satisfied.

I entertain no doubt but that the son would have been entitled to an account for the improvements; for although a court of equity will not specifically enforce a parol gift of land, yet, if the donee enter and make improvements upon it, a court of equity would never allow the donor to reclaim the possession of the land without making compensation for the improvements. This would be to allow him to make profit by the labor and expense of the donee, when such labor and expense were bestowed under a promise that the donee should have the land. But the bill is not framed for this purpose, and the allegations are insufficient to warrant such relief. Independent, however, of this, it was admitted that Harris Smith Evans was indebted to his father's estate in the sum of fifteen thousand dollars. In taking the account, of course, this debt would have to be accounted for, before any thing could be decreed to the administrator of the son, or to any of his creditors; and, from the entire proof, I think it is manifest that the value of the improvements could not equal this sum. A reference was therefore unnecessary; it could not have benefited the complainant.

There is no error in the decree and it must be affirmed.