## MORRIS *vs.* LEWIS' EXECUTOR.

[BILL IN EQUITY FOR SPECIFIC PERFORMANCE OF CONTRACT.]

1. *Sufficiency of consideration.*—An agreement between an infant's father and grand-father, by which the former delivered to the latter certain slaves belonging to the infant, upon the promise of the latter to keep them for the infant, to provide for her, and to give her, as the representative of her deceased mother, a child's portion in the distribution of his estate, constitutes the grand-father a mere depositary of the slaves for the benefit of the infant, and is not supported by a valuable consideration.

2. *Voluntary agreement not specifically executed.*—A court of equity will not, as in favor of a mere volunteer, even though he be the child of the promisor, compel the specific performance of a voluntary executory contract.

APPEAL from the Chancery Court of Russell.

Heard before the Hon. JAMES B. CLARK.

THIS bill was filed by Leonora P. Morris, an infant suing by her next friend, against the executrix of Pearce A Lewis, deceased, who was the complainant's grand-father; and sought the specific execution of a contract, entered into between said Lewis and the complainant's father, the material stipulations of which, as alleged in the bill, were these: In 1843, shortly after the death of the complainant's mother, who was a daughter of said Lewis, (complainant being her only surviving child,) " said Lewis proposed to complainant's father, that if he would relinquish back to him the possession of a slave, named Malinda, (who had been given by said Lewis to complainant,) and would let him have another family of slaves, about five in number, belonging to complainant, he would keep them for complainant, and provide for her, and that she should represent her mother in the distribution of his estate, and have a child's part of it." The bill alleged, that the complainant's father accepted this proposition, and delivered the possession of the slaves to Lewis, who, after retaining them for several years, finally disposed of them as his own property; and that said Lewis died in 1852, leaving a last will and testament duly executed,

which was admitted to probate after his death, and which excluded the complainant almost entirely from any participation in his estate.

On final hearing, on pleadings and proof, the chancellor dismissed the bill, for want of equity; and his decree is now assigned as error.

PARSONS & J. WHITE, and CLOPTON & LIGON, for the appellant, contended, that the bill showed a sufficient legal consideration to support the contract sought to be enforced; that that consideration consisted of the benefit accruing to the promisor from the possession of the slaves without liability to account, and the consequent injury to the complainant from the loss of the services of the slaves. They cited to this point the following authorities: Parsons on Contracts, 357, and cases cited in note c; Addison on Contracts, 11, and cases cited in note 1; Gurvin v. Cromartie, 11 Iredell's Law Rep. 179; Mosby v. Leeds, 3 Call, 380; Burnet v. Bisco, 4 Johns. 234; Warnock v. Hughes, 14 Ala. 156; Erwin v. Erwin, 25 Ala. 241; McKeen & Bro. v. Harwood, 15 Ala. 797; Brooks v. Ball, 18 Johns. 337; Pillans v. Microp, 3 Burr. 1666; Train v. Gold, 5 Pick. 380; Violett v. Patton, 5 Cranch, 142; Clark v. Sigourney, 17 Conn. 571; Austyn v. McLure, 4 Dallas, 226; Adams and Wife v. Adams, 26 Ala. 277; Gray and Wife v. Executor of Jones, 4 Dess. 185; Allison v. Congleton, Litt. Sel. Cas. 30; Lemaster v. Burckhart, 2 Bibb, 30.

JAS. E. BELSER, *contra*, cited Kirksey & Jones, 8 Ala. 131; Forward v. Armistead, 12 Ala. 124; Evans v. Battle, 19 Ala. 398; Pinckard v. Pinckard, 23 Ala. 649; Stafford v. Bartholomew, 2 Carter, 153.

WALKER, J.—Upon the two propositions, that the agreement alleged in the bill was altogether voluntary, and that such agreement will not be executed, the chancellor based the conclusion, that the bill was wanting in equity, and dismissed it. We proceed to give the reasons, which induce us to adopt those two propositions, and to concur with the chancellor in his conclusion.

The averments of the bill disclose no consideration for the agreement of Lewis to give the complainant a child's part of his estate, unless a consideration is indicated in the proposition made my Lewis, the grand-father, which, being accepted, became the exponent of the terms of the agreement. If that proposition indicates any valuable consideration, it consists of the fact, that the negroes were, in pursuance to the terms of the proposition, delivered to Lewis, to be kept by him for the complainant.

In ascertaining whether the delivery of the slaves to Lewis, to be kept by him for the complainant, was a valuable consideration for the agreement above specified, it is necessary to inquire what rights or benefits such a bailment conferred upon the bailee.

The bailment of the slaves to Lewis, to be kept without compensation for the complainant, is very like a deposit, if not identical with it. A *depositum* is defined to be, "a bare naked bailment of goods, delivered by one man to another to keep for the. use of the bailor;" and it is an essential characteristic of the contract, that the keeping shall be gratuitous.—Coggs v. Barnard, 2 Lord Raymond, 909; S. C., 1 Smith's L. C. 82; Edwards on Bail. § 47; Story on Bail. § 41. The depositary is a gratuitous bailee, and he is bound to account for any profits which may be derived from the property bailed.—Edwards on Bailments, 89–70; Story on Bailments, § 99. As the contract of Lewis was to keep the slaves for the complainant, and no benefit or profit to him was provided, and the terms of the agreement were strictly analogous to the implied agreement of a depositary, we conclude that Lewis, by .his contract, took no benefit, and could derive no profit. There was, therefore, no consideration of benefit to Lewis to support the promise which the bill seeks to enforce. The argument that Lewis was entitled to all the benefit and profit resulting from the possession of the slaves is neither supported by the terms of the agreement, nor by the law.

No consideration of detriment sustained by the complainant is either averred in the bill, or deducible from its allegations.

It is true that the trust and confidence reposed by the bailor in the gratuitous bailee is regarded as a sufficient consideration to support the obligation, which the law implies, that the bailee will bestow the degree of care and diligence required by the law.—Coggs v. Barnard, *supra;* 1 Smith's Leading Cases, 96, note; Edwards on Bail. 58. The law deems the trust and confidence of the bailor, and the bailee's obligation of care and diligence, as reciprocal stipulations of the contract of bailment, like mutual promises, each constituting a consideration for the other. But we know of no principle or reason, which would authorize us to assert, that the law would imply that the trust and confidence of the bailor in a deposit was the consideration on which a stipulation additional to and other than the obligation of care and diligence was predicated.

As the law does not imply that the promise of Lewis to give his grand-daughter a child's part of the estate was based upon the trust and confidence of the bailment, we must look to the terms of the contract, and to the allegations of the bill, to see whether that promise was induced by such consideration. Upon doing so, we find that it is neither stated in the contract, nor alleged in the bill, that that promise was induced by such consideration. Nor can the inference, that the promise was based upon that consideration, be drawn from the circumstances alleged in the bill. The complainant was the only child of a deceased daughter of Lewis. Her slaves (she being an infant) were in her father's possession. The grandfather made an agreement, conferring no benefit upon him, by which he obtained possession of the slaves, and came under the obligation to keep them for his granddaughter. He accompanied the proposition to take charge of the slaves with the assertion, that he would make the complainant an equal participant with his children in his estate. In the proposition he did not say, that the obtainment of the custody of the slaves induced him to make that declaration. Can we infer from these circumstances, if it were permissible to resort to inference in favor of the equity of the bill, that the consideration which induced

the promise was the possession of the slaves, as the com-
plainant's bailee, without the right of deriving any benefit
from the possession ?   A much more reasonable inference
is, that Lewis was drawn by the ties of kindred and
affection to take upon himself gratuitously the care of
the property, and to make the promise in question.

The promise was, in our judgment, not the result of a
valuable consideration.   The cases of Forward v. Arm-
stead, 12 Ala. 124, and Kirksey v. Kirksey, 8 Ala. 131,
presented questions very like that which we have been
considering; and in both the promise was held to have
been gratuitous, although their facts afforded more ground
for a different conclusion than do the facts of this case.
To the former of those two cases we refer, for a correct
statement of the principle governing the question here
decided.

2. The promise of Lewis being voluntary and unexe-
cuted, a court of chancery will not compel a performance
of it.   It is now well established, that the performance
of an executory contract will not be enforced in favor of
a mere volunteer, although the child of the promisor.
Evans v. Battle, 19 Ala. 398; Pinckard v. Pinckard,
23 Ala. 649; 2 Story's Equity, 125, § 793; 2 Kent's Com.
466, note a.

The decree of the court below is affirmed.

RICE, C. J., not sitting.