# Lewis *v.* Montgomery Mutual Building and Loan Association.

*Bill in Equity by Wife, to enforce Vendor's Lien on Land, and for Cancellation of Mortgage as Cloud on Title.*

1. *Advancement to or for child; resulting trust arising from payment of purchase-money.*—On a purchase of lands by the husband, partly on credit, if the cash payment is made with money furnished by the wife's father as an advancement to her, a resulting trust in the land arises in her favor to the extent of such payment, which attaches to the whole land, and which a court of equity will specifically enforce at her instance, when the purchase-money has been fully paid.

2. *Variance between allegations and proof.*—When the bill, filed by a married woman, and seeking to enforce a lien on land, alleges that the bond for title was conditioned for the making of title to her, while the proof shows that it was conditioned for the making of title to her husband and brother, who gave their notes for the unpaid purchase-money,

though the husband may have intended the purchase for her benefit, the variance " would probably be fatal to the claim for relief."

3. *Voluntary agreement not specifically executed.*—A court of equity will not aid or decree the specific execution of a mere voluntary agreement; as where the husband purchases land, taking the title-bond in his own name, but intending to have the title made to the wife on payment of the purchase-money, and afterwards has it made to a third person for valuable consideration paid, the wife can not assert any claim on the land based on the husband's unexecuted promise or intention.

4. *Conveyance of lands subject to mortgage or incumbrance.*—Where a conveyance of lands, subject to a mortgage or other incumbrance, contains a stipulation that the grantee is to satisfy and discharge the mortgage or incumbrance, he is as much bound by the stipulation as if he had signed the deed, and he can assert no claim on the land to the prejudice of the mortgagee, or the holder of the incumbrance; and the fact that the purchaser is a married woman does not affect the application of this principle.

APPEAL from the Chancery Court of Montgomery.

Heard before the Hon. H. AUSTILL.

The bill in this case was filed on the 19th July, 1873, by Mrs. Martha J. Lewis, a married woman, suing by her next friend, against her husband (Dixon H. Lewis), Samuel K. Cox, and the Montgomery Mutual Building and Loan Association, a domestic corporation; and sought to enjoin a sale of a tract of land, under a power contained in a mortgage executed to said association by Cox, and also under a subsequent mortgage executed to said association by the complainant and her husband, and to establish and enforce a lien on the land for the unpaid purchase-money alleged to be due from Cox. The tract of land contained three hundred and thirty acres, and was part of a larger tract containing nine hundred and thirty acres, which had belonged to Metcalf & Hatchett as partners, the legal title being in Metcalf. The bill alleged that, on the 1st November, 1869, "said Dixon H. Lewis, as husband of complainant, and Daniel Flynn, her brother, for himself, jointly agreed to purchase" said tract of land, "at and for the price of $16,041, one-third of which was to be paid in cash, and the balance in one and two years thereafter; that said Lewis, with money obtained from B. B. Flynn, complainant's father, which was given by her said father to [her], and was her separate estate under the laws of Alabama, on said 1st November, 1869, paid to said Metcalf the cash payment, to-wit, $5,347; and thereupon said Metcalf and his wife made to complainant and said Daniel Flynn, jointly, a bond conditioned to make titles to them to all of said lands, when the balance of the purchase-money should be paid according to agreement."

As to these matters, said B. B. Flynn, whose testimony was taken in behalf of the complainant, thus testified: "Dixon H. Lewis made the purchase as trustee for his wife, said Martha J. Lewis; and I made the cash payment, $5,347, for her, because

she was my daughter; and I desired to give her something as an advance of what might be coming to her as an heir of my estate, and for the purpose of furnishing her a house. There were no terms, or understanding, upon which I furnished the money, other than to make said advance to her as a portion of her share of my estate." Daniel Flynn, also a witness for complainant, testified: "I had no connection with the original purchase from Metcalf, but subsequently agreed with said Martha J. Lewis and her trustee, Dixon H. Lewis, to take a half interest in the land. The cash payment, $5,347.50, was made by B. B. Flynn, as an advance to his said daughter. A bond for titles was executed by Metcalf to Mrs. Lewis, or to her trustee, to make title after the purchase-money should be paid. I do not know the contents of the bond, nor the amount of the penalty; but I think it was made payable to said D. H. Lewis, as trustee for Mrs. Lewis, and was conditioned to make title when the purchase-money was paid." Metcalf, also examined as a witness for the complainant, testified: "I made the trade with B. B. Flynn. The cash payment was $5,347.50. I did not receive it, and I can not say who paid it to Mr. Hatchett. * * At the time of the sale, I gave a bond for title to some one; I can not say who, but think it was to Lewis as trustee; that is my recollection." Hatchett, to whom the cash payment was made, testified that the bond for titles was, to the best of his recollection, "made payable to D. H. Lewis, trustee;" and further, that he destroyed the bond when the first note was paid, as hereinafter stated, and a deed executed to Cox at the instance of Lewis. Said D. H. Lewis was also examined as a witness for the complainant, and thus testified as to these matters: "I made said purchase as trustee for my wife, and for her. The cash payment, $5,347.50, was paid for her by B. B. Flynn, her father; and for the other two-thirds of the price, I, as trustee for my wife, and Daniel Flynn gave our two notes, which were delivered to Metcalf. There was a bond given by Metcalf, conditioned to make title to the land when the purchase-money was paid. It was made payable to me, as trustee for my wife, and to said Daniel Flynn, and was delivered to me; and I afterwards delivered it to W. T. Hatchett." This was all the evidence adduced on the part of the complainant, as to the contents of the bond for title, and the original contract with Metcalf; as to which, strict proof was required by the Building and Loan Association, the only party who defended the suit.

In January, 1870, before the first note for the unpaid purchase-money fell due, Lewis, as trustee for his wife, agreed to sell a portion of the land, being the part involved in this suit, to Samuel K. Cox, one of the defendants, at the price of

$11,000, one-half of which was to be paid in cash; and the cash payment, $5,653, was made by Cox, in July, 1870, with money borrowed or procured from the said Building and Loan Association, of which he was a stockholder.  In order to enable Cox to procure said loan or advance from said association, Metcalf, at the instance of Lewis, executed a deed to Cox for the land, and entered on the title-bond an indorsement, "stating that the land embraced in said deed was released from the payment of the other note of Lewis and Flynn;" their first note having been satisfied by the cash payment made by Cox, and delivered up to Lewis.  The testimony of Hatchett on this point, as to the execution of the deed to Cox, was in these words: "It was understood that Cox, as soon as a deed was made to him, would mortgage the land to some Building and Loan Association, to procure some money.  This was what Lewis told me.  I don't remember anything else that was said about the mortgage.  I had conversation with Lewis, at various times, about this trade with Cox.  He seemed very anxious that Cox should have a deed, in order that he might mortgage the land, and raise some money, and pay us the note of Lewis and Flynn; and this was one reason given by him for being so anxious to complete the trade with Cox."  The testimony of Metcalf was to the same effect.  The deed of Metcalf and wife to Cox, which was made an exhibit to the bill, contained the following recitals: " *Whereas*, on the 1st November, 1869, the said Metcalf did sell to Daniel Flynn and D. H. Lewis a certain tract of land; and *whereas* the said Flynn and Lewis have agreed and consented that a deed shall be made to the said S. K. Cox: now, therefore, upon the payment by said Cox of the sum of $5,614.85, to us in hand paid, the receipt whereof is hereby acknowledged, we," the said Metcalf and wife, " do give, grant," &c.

In procuring this loan or advance of money from the Building and Loan Association, Cox bid off the nominal sum of $8,000 at a monthly sale of money by the association, which, after deducting the premium bid by him, netted the amount paid to Metcalf; and he executed to the association his note for $8,000, and a mortgage on the land to secure the monthly installments and dues, as provided by the charter and by-laws of the association; which were referred to in the note and mortgage, and declared to be a part thereof as if set out in full, and which may be found in Session Acts of 1866–7, pp. 408–16.  This mortgage was dated the 21st July, 1870, and a copy of it was made an exhibit to the bill.

For the deferred payment Cox executed his promissory note for $5,347, with interest from November 1st, 1869, which was made payable to E. H. Metcalf or bearer, as Lewis wished to

use it in taking up the last note of himself and Flynn held by Metcalf; but Metcalf refused to accept it in lieu of their note, and it was held by Lewis until some time in March, or April, 1871, when it was delivered up to Cox under these circumstances : Cox, finding it inconvenient to meet his monthly payments to the Building and Loan Association, and wishing to be rid of his liability, agreed with Lewis, or with Lewis and his wife, to convey the land to Mrs. Lewis, in consideration and on condition that they would assume his indebtedness to the association, and deliver up his outstanding note ; and in performance of this agreement, Cox and wife executed a deed, dated March 23d in its first sentence, but purporting to be signed and sealed on the 10th April, 1871, by which they conveyed the land to Mrs. Lewis, and which contained the following recitals: " *Whereas* the said Samuel K. Cox hath agreed, for considerations hereafter named, to transfer to said Martha J. Lewis all his right, title and interest, in a certain parcel of land purchased by said Cox of E. H. Metcalf, on the 13th July, 1870; now, therefore, upon said Martha J. Lewis assuming all liabilities of said Cox with respect to said land, to-wit, the monthly payments and interest upon fifty shares of stock in the Montgomery Mutual Building and Loan Association, upon which an advance has been obtained by the said Cox, and a transfer of which stock has been duly made to said Martha J. Lewis; and further, said Martha J. Lewis substituting her note, or some other, for a note for $5,347.50 given by said Cox to E. H. Metcalf, due November 1st, 1871, with interest from November, 1869, so that said Cox shall be freed from all liability with respect to said note, and the same be cancelled or returned to him ; upon the conditions above mentioned being complied with, we," said Cox and wife, give, grant, &c.

In pursuance of this agreement, and before the delivery of said deed by Cox, Lewis procured an assignment to himself, as trustee for his wife, of the fifty shares of stock in the association held by Cox, and paid the monthly dues for several months ; and in January, 1872, in order to enable him to meet the monthly payments as they became due, he purchased thirty other shares of stock, taking the assignment thereof to himself as trustee for his wife, and, at a monthly sale of money by the association, in January, 1872, bid off a nominal loan or advance of $6,000 on these shares ; and as security for this loan or advance, he and his wife executed to the association another mortgage on the lands, which was dated January 27th, 1872, and in the same form as the mortgage given by Cox, but contained these additional stipulations:   " And it is hereby expressly agreed and stipulated between the parties to these presents, that neither the said D. H. Lewis, nor the said Martha J. Lewis,

nor any other person for them or either of them, is to receive, or draw out from the treasurer of the association, any part of the money so borrowed by them as aforesaid, but that the same is to remain in the hands of the said treasurer, and be by him used and applied to the payment and discharge of the monthly dues and liabilities of the said Lewis and wife, which have already accrued, or may hereafter accrue against them; and that they are to be allowed legal interest, at the rate of eight per-cent. *per annum*, on the sum which may at any time remain in the hands of the treasurer, after deducting all monthly dues and other legal charges."

Default having been made by Lewis, for several months, in the payment of the monthly dues as stipulated, the association advertised the lands for sale under powers contained in each of the mortgages; and Mrs. Lewis then filed her bill in this case, seeking to enjoin the sale, and to enforce a vendor's lien in her favor to the extent of Cox's note which had been delivered up and cancelled. The bill alleged, that Metcalf's deed to Cox was made in consideration of the money which her father had paid for her on the original purchase; that its recitals showed that the land had been bought from Metcalf, not by Cox, but by Flynn and Lewis; that by these recitals "said association was put on notice to inquire of said Flynn and Lewis, from whom, if inquiry had been made, said association would have learned complainant's rights in the premises, with notice of which, as she insists, said association is thereby charged;" that the agreement for the surrender of Cox's note, and the substitution of the complainant and her husband to the liabilities of Cox, "was so made by her said husband, said Cox, and the officers of said association, without complainant's knowledge or consent; that said land was not, at that time, worth more than the amount due on the said note of Cox; and she here repudiates said contract, and now claims that said note is a subsisting claim in her favor, and is a lien upon said land for the payment thereof." The bill alleged, also, that each of the mortgages was tainted with usury, but did not offer to pay any balance that might be found due on a proper accounting.

Decrees *pro confesso* were taken against Lewis and Cox. An answer was filed by the Building and Loan Association, denying the charge of usury in its transactions, and affirming the validity of the mortgages under the powers conferred by its charter; denying all knowledge or notice of the terms of the contract between Metcalf, Lewis and Flynn, or the alleged rights of the complainant arising from that contract; insisting that the complainant could not claim and hold the land under the deed from Cox, and at the same time repudiate the obliga-

tions which it imposed on her; and demurring to the bill for want of equity, on several grounds which were specified.

The chancellor overruled the demurrer, but dismissed the bill on pleadings and proof; holding that "the only relief to which the complainant would be entitled, would be to call the respondent to account on a bill to redeem." The complainant appeals from this decree, and here assigns it as error.

R. M. WILLIAMSON, for appellant.—Mrs. Lewis had a vendor's lien on the land, commensurate with her equitable interest, to the extent of Cox's unpaid note, which was delivered to her husband, as her trustee, after Metcalf had refused to receive it. The note was her property, and constituted a lien on the land sold to Cox.—*Conner v. Banks*, 18 Ala. 42; *Bradford v. Harper*, 25 Ala. 337. The lien arises in the absence of an express waiver, and continues so long as any portion of the purchase-money is unpaid.—*Bozeman v. Ivey*, 49 Ala. 75; *Moore v. Worthy*, 56 Ala. 163; *Buford v. McCormick*, 57 Ala. 428. The defendant corporation is chargeable with notice of this lien, and can not claim protection against it as a *bona fide* purchaser. If it did not have actual notice, it is chargeable with implied notice by the recitals in Metcalf's deed and bond for titles. The arrangement by which Lewis and wife were substituted for Cox as the debtor of the association, and the new mortgage given by them, are void as to Mrs. Lewis, and are repudiated by her.

D. CLOPTON, *contra*. (No brief on file.)

BRICKELL, C. J.—The object and purpose of the bill is two-fold: *first*, the cancellation of the mortgage executed by Mrs. Lewis and her husband to the Building and Loan Association; *second*, to enforce a lien on the lands for the payment of the note given by Cox in part of the purchase-money, which, it is claimed, was not paid or extinguished by the transactions between him and the husband, but was surrendered by the husband in violation of his duty, and in excess of his authority, as trustee of the wife's statutory separate estate.

In either aspect of the case, relief is claimed, and can be granted, only upon the ground that the lands, as between the parties, are the statutory separate estate of the wife. The bill is rather vague and indefinite in its averments, but may be regarded as averring that the lands in controversy form part of a larger tract, which were purchased by the husband and Flynn from Metcalf, the husband contracting for the wife. It is averred that one-third of the purchase-money was paid in cash, Mrs. Lewis' father furnishing the money as an advancement to

her. For the remainder of the purchase-money, Lewis and Flynn made their promissory notes, and Metcalf executed a bond with a covenant for the making of title to Mrs. Lewis and Flynn, when the notes were paid.

1. There may be no doubt that a resulting trust, in favor of Mrs. Lewis, was created by the payment by her father of one-third of the purchase-money, for and as an advancement to her. The trust extended to the whole, and not to a part of the tract of land; and upon the final payment of the purchase-money, a court of equity would have specifically enforced it. 1 Lead. Eq. Cases, 339. And the trust extended to the inchoate equity arising from the contract of purchase, as it would have extended to the legal estate, when the contract was fully performed.—*Bogert v. Perry*, 17 Johns. 351; *Brothers v. Porter*, 6 B. Mon. 106. The mortgage to the Building and Loan Association, so far as it may operate upon, or affect this interest of Mrs. Lewis, is void; and upon a proper application, a court of equity would remove it as an incumbrance on her estate. *Chapman v. Abrams*, 61 Ala. 108; *Gilbert v. Dupree*, 63 Ala. 331. It is not the right of Mrs. Lewis in this aspect, the bill seeks to enforce, and further consideration of it is unnecessary.

2. A distinct averment, upon which the right to relief is rested, is, that the covenant in Metcalf's bond for title was for the making of title to Mrs. Lewis. If this averment was proved, it may be the inchoate equity, arising from the contract of purchase, was vested in her, and was her statutory separate estate. The averment is not admitted by the answer, and the evidence is conclusive that the bond for title, which has been lost, contained no such covenant. The covenant it contained was for the making of title to the husband and to Flynn, who had given the notes for the unpaid purchase-money. This variance between the allegations and evidence would, probably, be fatal to the claim for relief, independent of all other considerations. It is a rule, both in equity and at law, that the *allegata* and *probata* must correspond. No matter how just the demand which the complainant may make out by proof, if it does not harmonize with the allegations of the bill, relief can not be granted.—1 Brick. Dig. 743, § 1528.

3. But, if this consideration was waived, we can not doubt the bill was properly dismissed. The title asserted, and the only title (except a resulting trust, which we have previously stated was created) Mrs. Lewis could assert, as derived from the original purchase of the lands, as that purchase is shown to have been made, must be derived from the fact, that for her the husband made the purchase, intending to pay the notes which bound him personally, and, when they were paid, to take title to himself as her trustee, clothing her with the beneficial

[Coker v. Ferguson's Administrator.]

estate. This was merely voluntary on the part of the husband, resting wholly in intention, revocable by him at will; and the intention was abandoned, as to the lands in controversy, when he made sale of them to Cox, and caused Metcalf to convey to him the legal estate in performance of the covenants of the bond for title.—*Forward v. Armstead*, 12 Ala. 124; *Evans v. Battle*, 19 Ala. 398. So long as the title or right of Mrs. Lewis to the lands, dependent upon this intention of the husband, remained without a declaration in writing of the intention—so long as it may be said to have been merely executory—it was incapable of enforcement in any court, or of being aided in equity.—1 Lead. Cases, 420. It rested only in the generosity of the husband, whether it would be executed or not. When he made the sale to Cox, and caused a conveyance to be made to him, he was disabled from executing his intended purpose.

4. No right to relief is based upon the conveyance executed by Cox to Mrs. Lewis. By the terms of that conveyance, Mrs. Lewis was bound to pay the debt of Cox to the Building and Loan Association, and to surrender or protect him against payment of the note he had given for the unpaid purchase-money. The acceptance of such a deed, containing a statement that the grantee is to pay off incumbrances, or is to perform other acts for the grantor, binds the grantee as effectually as though the deed was *inter partes*, and had been executed by both grantor and grantee.—*Trotter v. Hughes*, 2 Kernan, 74. We do not mean, of course, that it bound Mrs. Lewis personally; for her coverture incapacitated her from incurring personal obligations or liabilities. The land is bound, and, before she could claim title, the conditions of the deed must have been performed. *Patterson v. Robinson*, 25 Penn. St. 81; *Marks v. Cowles*, 53 Ala. 499.

The decree of the chancellor is affirmed.

STONE, J., not sitting, having been of counsel.