## MOORE, ET ALS. v. CLAY.

1. A Court of equity may relieve against the fraudulent silence of the vendor, by which the vendee, failed to obtain a portion of the land he supposed he was buying, and the vendor was selling.

2. M. offered for sale, to C., his tract of land, lying in Ashburn Cove, containing about nine hundred and eighty-two acres, at $8,000, and a day was appointed for its examination. C. accordingly went, and distrusting M. procured one of the neighbors, to show him the lands. The next day the parties met to close the contract, and upon C. putting down the different parcels, amounting to nine hundred and twenty acres, remarked to M. that there was not as much land, as he had represented—to which M. replied, by asking him if it was not worth what he asked for it: *Held*, that as it was satisfactorily shown, by the circumstances, and by the proof, that M. knew, that C. had omitted a portion of the tract, he supposed he was buying, his omission to disclose the fact, was a fraudulent concealment, and that a Court of equity would relieve against it.

3. A purchaser who buys land previously purchased by another, pays the purchase money, and obtains his title, before he receives notice of such prior purchase, will be protected in equity. These facts he must alledge in his plea, or answer, whether he is charged in the bill with notice, or not, and must deny notice down to the time of the payment of the purchase money, and the execution of the deed, or he will be held a purchaser with notice of the previous sale.

4. A record of the Orphans' Court cannot be collaterally impeached, if the Court obtained jurisdiction to make a division of real estate, proceeded to render a final decree, and the commissioners in fact made a division.

5. Where one purchases land and pays the purchase money, and is afterwards held to be a purchaser with notice of a prior purchase, a Court of Chancery is not compelled to decree the purchase money unpaid, to the vendor, and the rents and profits to the vendee, but may decree that these sums shall *pro tanto* extinguish each other, and put an end to the litigation, by decreeing also as between the defendants.

Error to the Chancery Court of Madison.

THE bill was filed by the defendant in error, and alledges, that on and before the 12th of October, 1833, there was in contemplation between William H. Moore, and complainant, a contract, by which he was to purchase of the former, his several tracts, or parcels of land, including the lands purchased by him of the heirs of Daniel McDuff, containing about nine hundred and eighty acres, (which are described,) and including a lot

of sixty-two acres, which Moore had purchased of the heirs of McDuff, for which he was to pay the sum of eight thousand dollars, in four payments.   That on the day aforesaid, the purchase was completed, and a memorandum in writing executed, setting forth the lands sold, and the terms of the sale, but by the mistake of complainant, and the fraud of Moore, the tract of sixty-two acres was omitted.   That on the 30th October, 1833, Moore and wife, executed to him a deed for the lands, in which the tract of sixty-two acres were also omitted, and that he did not discover the mistake, until after the execution of the deed, although it was well known to Moore.   That he did not discover the omission in the deed, until December, 1833, when he demanded of Moore to convey the sixty-two acres to him, which the latter refused.

That some time after the purchase by complainant, Moore sold the sixty-two acres of land, to Robert Freeman, who purchased with knowledge of complainant's right.   That Moore and Freeman, have been ever since in possession of the land, which is equal in quality to the residue of the tract.   That Moore and himself agreed to leave the controversy to the arbitrament of attorneys of the Supreme Court, to be chosen by the parties; and that testimony might be taken by either party on notice, and admitted the existence of certain facts as the basis of the arbitration.   The agreement bears date the 1st November, 1834, but need not be here set out, as it is adverted to, in the opinion of the Court.   The arbitration was not made from the omission of Moore, to appoint a referee, though one was appointed by complainant.

The prayer of the bill is for a title to the sixty-two acres.

Moore in his answer, denies that he sold the sixty-two acres claimed in the bill.   Admits he stated in a previous conversation, that he had about nine hundred and eighty acres of land for sale, for which he was willing to take $8,000.   That when complainant examined the land, he did not ask respondent to show it, but relying on the examination he had made himself, and with full knowledge of all the facts, and the declaration of respondent at the time, that he had not yet obtained title for this sixty-two acres, he entered into the written agreement for the purchase of the nine hundred and twenty acres.   Subsequent to this, respondent obtained a deed from McDuff for

the sixty-two acres. He denies that there was any contract previous to the written agreement. He admits the admissions made by him of facts, but insists they are not binding on him, as they were not acted on, and were obtained from him, without a knowledge of their import, and were made with reference to an amicable adjustment, &c.

Freeman answers, and admits the purchase of the land from Moore, for which he says, he paid a full and valuable consideration, and denies that at the time of his purchase, he knew that complainant had any claim to the land in question, and denies all fraud or collusion.

A supplemental bill was filed by the complainant, in which he alledges, that when Moore sold the land to him, and made him a deed therefor, and also when he sold to Freeman, that he had not the legal title to the sixty-two acres, described in the original bill. That although he had previously purchased it from R. McDuff, had paid him for it, and obtained possession of it, yet, that by mistake, McDuff conveyed to him a different piece of land. That McDuff is dead, leaving infant heirs, who are named and made parties. The prayer of the bill is, that they be compelled to convey the title to complainant.

The heirs, so far as they answered the bill, do not admit the allegations of the supplemental bill, and require proof.

A bill was also filed for an injunction, against the collection of $500, part of the purchase money, remaining unpaid.

The Chancellor, at the hearing, considering the allegations of the bill, and supplemental bill, as established, and that the complainant was entitled to the relief he sought, decreed, that the title to the sixty-two acres be divested out of McDuff's heirs, and vested in the complainant, and referred it to the master, to state an account between the parties, who reported, that complainant was indebted to Moore on account of the purchase, $803 33, and was entitled to recover for rent, $805 17, which was approved and confirmed by the Chancellor.

From this decree, the defendants prosecute this writ, and assign many errors, which are noticed in the opinion of the Court.

ROBINSON, for the plaintiffs in error, argued, that the effect of the bill, was to enforce a parol contract for the sale of lands,

when all the evidence in the cause showed, that there was no contract whatever for the sale of the land, until the written agreement was entered into, and parol evidence is inadmissible to contradict that agreement. [1 Fonb. 200, note O; 2 Atk. 383; 3 Id. 8; 3 H. & M. 388; 2 Vesey, 417; 1 Johns. Ch. 428; 1 H. & B. 659; 5 Rep. 25; 2 Br. C. C. 218; 7 Vesey, 218; 4 Taunt. 786; 1 Phil. Ev. 567; 3 Ib'. 1466, note 984.]

This objection appears upon the bill, and the statute of frauds need not be pleaded. [Story E. P. 389.] Where a complainant seeks to rectify a written agreement, varied by fraud, mistake, or surprise, and then enforce the agreement in its new form, the statute of frauds will bar relief.

But there is no fraud shown. Clay did not rely upon Moore, but examined for himself, and there was no obligation upon Moore, to apprise him of his mistake. [Sug. Ven. 2, 6 Am. from 10 Lond. ed.; 1 Story Eq. 216, 206, 201, 159; 1 Fonb. 379; 1 Ala. Rep. 168; 2 Id. 635; 5 Id. 593.]

The admissions of Moore, made after the sale, were insufficient to make out the case, nor could it be made out by that kind of testimony. [2 Johns. Ch. 630, 585; 6 Vesey, 328; 1 Brown, C. C. 92; 3 Id. 168; 1 Vesey, 241; 4 Dess. 211; 1 Wend. 625; 6 Id. 268; 1 Bibb, 611; 2 Id. 311; 5 Martin Lou. N. S. 18; 6 Monroe, 136; 2 J. J. M. 65; 4 Id. 101.]

The fact that Clay did not attempt to take possession of the sixty-two acres, shows that he waived his right to it, or renders it incredible that he supposed he had purchased it. [3 P. Wms. 193; 1 Vesey Jr. 226; 12 Id. 27; 11 Id. 464; 2 Swanston, 222; 3 Id. 168; 4 B. C. C. 495; 4 Rand. 478; 3 Merivale, 53, 124; 10 Vesey, 505.]

The deposition of Bradley should have been rejected, because the bills and notes were not produced.

The Chancellor allowed more for rent than was charged in the bill, to be the value of the lands. [9 Cranch, 19; 7 Wheaton, 522.]

Freeman denies notice—the bill itself could not be notice of facts happening previous to service of subpœna. The deposition of Moore to prove that Freeman was a purchaser, for a valuable consideration, should have been received, as his interest was precisely balanced between Clay and Freeman.

The transcript from the Orphans' Court, showing the divi-

sion between the heirs of McDuff was utterly void, and therefore, the Court cannot divest the title of the heirs of McDuff.

HOPKINS and McCLUNG, contra. The offer of Moore was to sell a particular tract of land. Clay examined the tract, and was willing to purchase it, under the impression, that it contained the tract of sixty-two acres purchased from McDuff, although he then supposed it contained but nine hundred and twenty acres. Moore was aware of the mistake, into which Clay had fallen, and did not correct it, but suffered him to go on, and complete the purchase. This was a fraud, which Chancery will relieve against, against Freeman, as well as Moore, if the former purchased with notice of complainant's equity. [3 Peters, 210; 1 Story Eq. §.156–9, 158, 160, 201; § 192, 204.]

Freeman upon his answer must be treated as a purchaser with notice. He does not alledge, whether the title he obtained was legal or equitable. [Sugden on Ven. 543, 555.] Nor what consideration he agreed to pay for the lands. Nor that he paid any part of it before notice. [2 Atk. 631; 7 Vesey, 290; 1 Johns. Ch. 566; 8 Wheaton, 449; 10 Peters, 179; 1 H. & J. Ch. 261; 5 S. & P. 215; Mitford's Pl. 222.]

Having in his answer alledged that he paid the purchase money to Martin & Pleasants, he could not afterwards prove that he paid it to Moore, admitting Moore to be competent. But Moore does not state when the money was paid. [Gressly Eq. Ev. 9.]

If Freeman purchased without notice of Clay's equity, he had but an equity himself, and being acquired subsequent to that of Clay, must yield to it. [10 Peters, 179, 210; 2 Fonb. 301.]

Moore was not a competent witness. [2 Johns. 394; 4 Id. 293; 6 Id. 523.]

The transcript of the record from the Orphans' Court, is ample to show a division of the land, and that the sixty-two acres was allotted to R. McDuff, and cannot be impeached collaterally. [6 Porter, 219.]

The last bill alledges the payment of all the purchase money but $500, and not being answered by Moore, is evidence against him as an admission. [3 Porter, 125; 1 Id. 375; 1 Bibb, 466; Clay's Dig. 554.]

The admission of Moore upon the submission to arbitration, was evidence against him. [4 Phil. Ev. 10; 2 Pick. 285; 4 Id. 377; 21 Eng. Com. Law, 355; 22 Id. 439; 1 Esp. Rep. 143; 3 Id. 113.] But the proof of the fraud is full without it.

There is no error assigned, which enables the Court to revise the last decree, confirming the master's report, and perpetuating the injunction, and no exceptions were taken to the report. The only error complained of, is in the first decree, which did not dispose of the injunction. [3 Porter, 475 ]

ORMOND, J.—The object of the bill is, to obtain the title to sixty-two acres of land, part of a large tract purchased by the defendant in error, of Moore, which it is alledged, was fraudulently omitted, both in the memorandum of the sale, and in the deed subsequently executed.

It appears from the record, that Moore offered for sale, his tract of land, in Ashburn Cove, in Jackson county, including the lands purchased of the heirs of Daniel McDuff, containing about nine hundred and eighty acres. It is admitted by Moore, in his answer, that he had offered the land to Clay at some time previous to the consummation of the contract, and as appears from the testimony of Jordan, Clay, at the instance and by the request of Moore, to whom Jordan had been sent by Moore for that purpose, appointed a day for the examination of the land.

Clay accordingly went, accompanied by W. Brandon, but as it appears, having some distrust of Moore, did not ask him to show him the lands, but got Mr. Gurley, one of Moore's neighbors, who knew the land, to aid him in the examination. Gurley accordingly showed him all the land, including the sixty-two acres in dispute. The next morning the parties met at Gurley's house, and upon making an estimate, Clay remarked to Moore, that there was not as much land as he expected, to which Moore replied, "well, it is worth as much as I asked you for it," whereupon Clay agreed to take it, and the writings were executed, enumerating each particular piece, of which the entire tract was composed, but leaving out the sixty-two acres.

There can be no doubt whatever, that Clay supposed he was

purchasing the entire tract, which had been offered to him, and which he had examined, of which this sixty-two acres comprised a part. It is equally as certain, that Moore knew when the contract was made, that Clay was acting under a mistake, as to the sixty-two acres, and did not undeceive him. This appears, not only from the circumstances, attending the transaction, but explicitly from the proof, without considering the admission made by Moore, upon the proposed reference to arbitration. The evidence of Taylor, and Chambliss, proves that Moore knew of the mistake of Clay, and that he assigned as a reason for not undeceiving him, that Clay had distrusted him, and had procured others to aid him in the examination of the land, and considered the deception a good joke.

This conduct is wholly indefensible in morals, and the question is, whether in the estimation of a Court of Chancery, it is a fraud. Fraud in its broadest sense, consists in the assertion of a falsehood, or in the suppression of the truth. The latter branch of this definition, is much more difficult of application, than the first, from the narrow boundary, which frequently separates cases of conscience, from questions of law. Motives, which address themselves to the honor of the party, from those acts, and omissions which the law can redress.

This topic has frequently been under discussion in this Court. In Camp v. Camp, 2 Ala. Rep. 636, after an examination of this principle, it is said, " But the law is not so destitute of morality, as not to require each of the contracting parties to disclose to the other, all the material facts of which he has knowledge, and of which he knows the other to be ignorant, unless they are open to common observation ; and not to forbid any intentional concealment, or suppression of the material facts necessary to be known, and to which the other party has not equal access, or means of ascertainment." So in Steele v. Kinkle & Lehr, 3 Ala. Rep. 357, it is said, a fraudulent concealment, is the failure to disclose a material fact, which the vendor knows himself, which he has a right to presume the person he is dealing with is ignorant of, and of the existence of which the other party cannot by ordinary diligence, become acquainted." Mr. Justice Story, in his work on Equity, 213, § 204, thus defines it—" The case must amount to the suppression of facts, which one party under the circumstances, is bound

Moore, et als. v. Clay.

in conscience and duty to disclose to the other party, and in respect to which, he cannot innocently be silent."

It is perfectly clear, that Moore was aware that Clay was ignorant of the fact, that in putting down the several parcels of which the tract was composed, he had left out the sixty-two acres.  His attention was drawn to it, by the surprise expressed by Clay of the diminution in the quantity.  This expression on the part of Clay, had reference to the previous conversation of the parties about the purchase of the land, and instead of informing him of the true state of the case, that his representation was correct, but that he, Clay, had omitted one of the parcels, he makes a remark, the direct tendency of which was to mislead, and throw him off his guard—that the land was, nevertheless, worth what he asked for it.  The plain and evident meaning of which is, although I may have over estimated the number of acres in the tract, it is worth what I ask for it.  Clay being of that opinion, and being willing to give the price asked for the land he had examined, concluded the bargain.  It is important to consider, that this was not a sale by the acre, but at a gross price.  The precise number of acres of which it consisted, was not therefore a matter of vital importance to be known.

This conduct on the part of Moore, appears to be the "industrious concealment," spoken of in the books—it was a resort to artifice to throw the other party off his guard, and prevent the true state of the case from being known, and approaches very near, if it is not in fact, the assertion of a falsehood.  For the answer of Moore to Clay's remark, was intended to be understood, in a different sense from what was really the truth, as he knew at the time that the tract he was offering to sell, and Clay supposed he was buying, did contain nine hundred and eighty acres.

Again, in the deed which was made, after describing all the land except the sixty-two acres, the description continues, "and including the lands purchased by said Moore, of the heirs of Daniel McDuff," &c.  This is a direct admission of the fact, which, in connection with the other proof, leaves the matter free from the possibility of doubt, that this particular tract was included as part of the land offered for sale.

That a Court of Equity can afford relief in such a case, when

the facts are fully and clearly made out, we think, cannot admit of serious doubt, at this day. The counsel for the plaintiff in error, supposes that relief can only be granted by enforcing the parol negotiations, which preceded the sale, and the consummation of the contract. They were, as he insists, negotiations merely, and therefore not binding on either. They are only referred to, as explanatory of the meaning and intentions of the parties, *as to the subject matter of the contract*, and not to explain, add to, or vary its terms, and the admission of such testimony has never been held, as violating either the rule of evidence, that a written instrument cannot be varied by parol, or the statute of frauds. [Ogilvie v. Foljambe, 3 Merivale, 52; Ellis v. Burden, 2 Ala. Rep. 463.]

Independent of this consideration, it is the established practice of Courts of Equity, to relieve against a written contract, where material stipulations have been added, or omitted, by mistake or fraud. This has always been considered an exception to the general rule, and is submitted to from the necessity of the case, to prevent a greater evil—the triumph of fraud, or the taking advantage of an innocent mistake. This point, was expressly thus ruled by this Court, in Minge v. Smith, 1 Ala. Rep. 415—that in a sale of lands, if either party has misrepresented, or made a fraudulent concealment as to quantity, the law will afford redress to the party aggrieved. See also Barnett v. Stanton & Pollard, 2 Id. 182; Cullum v. The Br. Bank at Mobile, 4 Ala. Rep. 21; Van Arsdale & Co. v. Howard, 5 Ala. Rep. 601; see also, 1 Story's Eq. 166, §§ 154, 155, and cases cited.

Having thus ascertained that the complainant is entitled to relief against Moore, we come to the consideration of the question, whether he is also entitled to relief against Freeman, who claims to be a purchaser of the land, without notice of the equity of Clay.

The doctrine upon this point is perfectly well understood, and free from all difficulty. A purchaser who buys land previously purchased by another, pays the purchase money, and obtains his title, before he receives notice of such prior purchase, will be protected against it. The plea, or answer, in which this defence is made, must aver these facts. Let us examine the answer of Freeman in this case. He admits, that

in the fall of 1834, he purchased from Moore a tract of land, consisting of two hundred and seventy-nine acres at the price of $2,599, payable in three annual instalments, the first falling due 1st January, 1835, all of which he has paid, and obtained a deed therefor from Moore.  He admits, that the land in dispute was included in his purchase, but denies that he ever heard of the claim of the complainant, *before he made the purchase*.  The deed from Moore to him, which is made an exhibit, is dated 1st February, 1836.

The allegations of this answer, considered under the statute as a plea, are wholly insufficient.  The allegation that he did not have notice before he *made* the purchase, is of no avail, because, if he received notice before he *paid* the purchase money, it was sufficient.  If he had paid a part of it, he should have proceeded no further with the contract, after receiving notice.  It is insufficient, in not stating *when* he paid the purchase money.  These important allegations are studiously avoided, nor indeed, is it stated with any thing like certainty, what price he was to give for this particular tract, or what proportion it bore, in *value*, to the entire tract purchased by him. If notice is not charged in the bill, it must nevertheless be denied in the plea, or answer—and it must be alledged that the vendor was, or pretended to be, seized in fee, and was in possession.    [Boon v. Chiles, 10 Peters, 211 ; Story v. Lord Windsor, 2 Atk. 630; Duphey v. Frenaye, 5 Stew. & Por. 238 ; Sugden on Ven. 555.]

From this it appears, that the answer is entirely insufficient, admitting it to be true, to show that Freeman is a purchaser, for valuable consideration, without notice of the complainant's title.   The complainant is entitled to the oath of the party seeking thus to protect himself, in addition to proof of the facts by competent testimony, and he must swear that he had not notice at the time of the purchase, and down to the time of the payment of the purchase money, and the execution of the deed. But in this case, the record shows that he was served with a *subpœna* and copy of the bill, before all the purchase money was due, and before he received a deed for the land.   It is therefore unnecessary to consider, whether the evidence of Moore was properly rejected or not, as it could not have availed the defendant, Freeman, if it had been considered.

The proof is ample to show, that the sixty-two acres in controversy was assigned to Richard McDuff, as one of the heirs of Daniel McDuff, and that he sold it to Moore, and put him in possession, if the record of the Orphans' Court of Jackson county, by whose direction the division was made, is competent testimony.   The case of Wyman v. Campbell, 6 Porter, 221, is a conclusive authority, that the record of the Orphans' Court cannot be impeached collaterally, for any irregularity; or informality in the proceedings, if the Court obtained jurisdiction, and rendered a final decree.   The proceeding in this case was under the act of 1822, (Clay's Dig. 196, § 22.)   Upon the petition of one of the heirs, the Court appointed commissioners to divide the real estate of Daniel McDuff, and ordered the return to be made, at a particular term of the Court.   A survey and division of the land was made, and returned by them, and recorded by the clerk, and however irregular it may be, it cannot be impeached in this collateral way.   The Court having acquired jurisdiction, and made its order or decree, the action of the commissioners, consequent thereon, is final, until reversed in a direct proceeding, having that for its object.   The Court therefore did not err in divesting the title, which still remained in the heirs of Richard McDuff, and vesting it in the complainant.

It only remains to consider the final decree.   There being no exception to the master's report, the only matter left open for the Chancellor, upon the final decree, was to make a proper disposition of the purchase money, still due from Clay to Moore, and the amount found by the report, to be due for the rent and profits of the land.   It appears by the master's report, founded upon the testimony of Bradley, that all the purchase money has been paid by Clay, except $500.   An objection has been raised to this evidence, because the bills and notes paid off were not produced, or their absence accounted for.   This was not necessary, as was held by this Court in the P. and M. Bank v. Borland, 5 Ala. Rep. 543, and in other cases.   This money belongs to Moore, and should have been decreed to him, but the Chancellor has decreed a perpetual injunction against its collection, probably considering that the amount due from Freeman for rent, being about the same amount, extinguished it.   This, however, cannot be accomplished in this

mode, as the moneys are not due in the same right. The decree should have been in favor of Moore, against Clay, for the purchase money unpaid, and in favor of Clay, against Freeman for the rents and profits.

It is true, that a Court of Chancery will, when it has the power, decree as between the defendants, and settle the entire controversy in one suit. This is peculiarly a case of that kind. If Freeman has paid Moore, he should be allowed to extinguish the amount so paid in the hands of Clay. And this Court would so decree, if the record furnished the necessary *data.* But there is no evidence of the amount paid by Freeman to Moore, in any part of the record, for this particular piece of land. The testimony of Moore, which might be looked to for this purpose, does not state the amount, or when it was paid.

The decree of the Court must be therefore modified, so far as to render a decree in favor of Moore, for the purchase money unpaid, in all other respects it is affirmed. As the case has not been considered in the aspect last adverted to, by the Chancellor, the cause will be remanded, to enable either of the parties, if they think proper, upon a showing of the necessary facts, to move the Court to decree an extinguishment to the amount of the sum paid by Freeman to Moore, with interest.

From the peculiar condition of this cause, we do not think it equitable that either of the parties should be taxed with the entire costs of this Court, it must therefore be borne equally, by Moore, Freeman and Clay, the real parties litigant upon the record.