# Lewis et al. *v.* Mohr.

*Bill to Establish Resulting Trust in Lands.*

1. *Pleadings construed most strongly against pleader.*—A bill to establish a resulting trust in lands, alleging a purchase by the husband as trustee, a payment with wife's money of one-third the purchase money, the execution by vendor of a bond for titles to be made to the wife or her husband as her trustee; that the husband re-sold part of the land to a third party applying the cash received to payment of second installment of the purchase price of the whole tract, a failure by the purchaser of the part to complete payment, and the execution of a deed to her for the whole tract, on her assuming the liabilities of her vendee, will be construed in the absence of other averments as affirming that these acts were authorized by the wife.

2. *Resulting trust—what not.*—Payment by a sub-purchaser of a portion of a tract of land, of a part of the price which is applied to the partial release of a lien on the whole tract, furnishes no predicate for declaring a resulting trust in that part sold to the sub-purchaser.

3. *Purchaser for value without notice protected.*—An averment in the bill of the payment of value by purchasers from the vendee of complainants or their ancestor through whom they claim, renders it necessary to further aver that such purchasers had notice of complainant's claim on the land and in the absence of such averment the bill is demurrable.

APPEAL from Montgomery Chancery Court.

Heard before Hon. JOHN A. FOSTER.

The grounds of demurrer noticed in the opinion are in substance as follows:

2. Said Dixon H. Lewis took a bond for title in favor of his wife and not in his own name.

3. That the money was not paid on the land at the time of the purchase.

4. That if any resulting trust ever existed it attached to a large tract of which the tract in controversy constituted only a part.

[Lewis et al. v. Mohr.]

9. That if any trust in said lands ever existed in favor of complainant's ancestor, it became merged in the legal title.

10. That complainants are estopped from asserting the trust.

11. That it appears from said bill that defendants are *bona fide* purchasers for value of said lands, without notice of complainant's claim.

ARRINGTON & GRAHAM, and A. A. WILEY, for appellants, cited *Preston v. McMillan,* 58 Ala. 84; *Whaley v. Whaley,* 71 Ala. 159; *Lehman v. Lewis,* 62 Ala. 129; *Lewis v. B. & L. Association,* 70 Ala. 276; *Wells v. Morrow,* 38 Ala. 125; *Craft v. Russell,* 67 Ala. 9; *May v. Wilkerson,* 76 Ala. 543.

W. S. THORINGTON, *contra,* cited *Tilford v. Torrey,* 53 Ala. 123; *Lewis v. Lehman,* 62 *Ib.* 129; *Marks v. Cowles,* 53 Ala. 499; *Welsh v. Phillips,* 54 Ala. 304; *Bartlett v. Vasner,* 56 Ala. 580; *Ib.* 303; *Reel v. Overall,* 39 Ala. 138; 2 Ala. 373; 26 *Ib.* 405.

McCLELLAN, J.—This bill is filed by the heirs at law of Martha J. Lewis, deceased, for the purpose of having declared and enforced in their favor a resulting trust in 300 acres of land in the purchase of which, it is alleged, certain funds belonging to the statutory separate estate of Mrs. Lewis were used by her husband, Dixon H. Lewis. It is averred that said Dixon H. as trustee for the said Martha J. Lewis purchased 900 acres of land from Metcalf for $16,000, in round numbers, one-third cash and balance of purchase money in equal instalments at one and two years; that the cash payment was made with funds belonging to her statutory separate estate and that thereupon Metcalf executed to said Dixon H. Lewis as such trustee a bond for titles conditioned to make title to Martha J. Lewis or to her husband as her trustee on full payment of the purchase money. Before the second instalment of the purchase money became due, Dixon H. Lewis, it is further alleged, as Mrs. Lewis' trustee, sold certain 300 acres of the tract to one Cox for $11,000, half cash and balance at one year, that the cash payment was made to Metcalf, and thereupon, or rather in anticipation thereof, he conveyed this parcel to Cox in fee in accordance with an arrangement between himself and Cox and Lewis as such trustee. It also appears from the bill that Cox mortgaged the land to The Montgomery Mutual Building & Loan Association to procure money with which to make the cash payment, and that the sum so borrowed was, as above stated,

[Lewis et al. v. Mohr.]

paid to Metcalf. Subsequently, Cox, failing to make the second payment for this 300 acre parcel to Mrs. Lewis or her trustee said Dixon H. conveyed it to her upon condition that she would assume and pay all liabilities which Cox had incurred in the premises to the Building & Loan Association. The debt due that association and secured by Cox's mortgage was not paid, and, the association having been dissolved and a receiver appointed, the receiver sold the land under a power of sale contained in the mortgage, the respondent and appellee, Mohr, became the purchaser at that sale, complied with its terms, received a conveyance accordingly and has since held possession of and claimed to own the same.

The bill was demurred to on several grounds. The chancellor held some of the assignments of the demurrer well taken, and from the decree in that behalf this appeal is prosecuted.

The transactions involved occurred prior to the enactment of the present law respecting the estates of married women. Under the former law, it was within the competency of the husband in his capacity of trustee for the wife to purchase property for her with her concurrence and pay for it with funds belonging to her statutory separate estate. He, also, as such trustee had power and authority with her consent and concurrence to sell property constituting her statutory separate estate for reinvestment.—*Marks v. Cowles*, 53 Ala. 499. It is not averred in the bill that Mrs. Lewis assented to and concurred in either the purchase of the 900 acre tract from Metcalf or the sale of 300 acres of that tract to Cox, but the bill contains nothing going in any degree to negative such concurrence on her part. It is, however, as we have seen, alleged that both this purchase of the whole tract, and this re-sale of a part of it, were made by Dixon H. Lewis *as the husband and trustee* of Martha J. Lewis. It further appears that Metcalf's bond for title was conditioned for a conveyance to Martha J. Lewis, *or* to Dixon H. Lewis as her trustee. And also that Cox conveyed the 300 acre parcel to Mrs. Lewis upon his failure to pay the deferred instalment of purchase money on the sale by Dixon H. Lewis as her trustee to him. Now as the averments of the bill in relation to the capacity in which Dixon H. Lewis purchased the land and re-sold a part of it can not be technically accurate unless Mrs. Lewis concurred in those transactions and as there is no negation of such concurrence, the bill is open to a construction whereby it will be taken to import that Mrs. Lewis did efficaciously concur both in the purchase from

Metcalf and in the sale of a part to Cox; and this construction being the most unfavorable one to the claims of the complainants it becomes our duty on a familiar principle to subject the bill to it, and to hold for all the purposes of this appeal that her concurrence in and assent to these transactions are to be taken as affirmatively alleged in the bill. So too, on the same principle, it is to be considered that the bill avers that Metcalf's bond for title was conditioned for a conveyance to Mrs. Lewis, and not to her "or" to Dixon H. Lewis as her trustee."

So construed the bill presents in the first instance simply a purchase of 900 acres of land by Mrs. Lewis, and the payment by her of one-third of the purchase-money whereby she acquired an interest or inchoate equity in the land, and in the second instance the sale by her of this inchoate equity in so far as it pertained to the 300 acre parcel to Cox for $11,000, one-half of which was presently paid to her, and applied, it seems, to the payment of the second instalment due Metcalf for the whole tract, thereby enlarging her inchoate equity in the remaining 600 acres, and leaving Cox indebted to her to the extent of the other half of the $11,000 he agreed to pay for the 300 acre parcel.

It is most clear, we think, that these transactions involve no predicate for the declaration of a resulting trust in the 300 acre tract of land in her favor while living, or, she being dead, in favor of her heirs, the present complainants. One fact always essential to the existence of such a trust in lands is that the title, or inchoate equity where only partial payment of the purchase-money has been made and no conveyance is executed, is vested in a person other than him who pays the purchase-money in whole or in part. This is the universal doctrine of the books, and is manifestly sound in principle, since in the nature of things there can be no occasion for the law to imply or raise up a trust in property in favor of one who is already invested with every possible interest, or every interest he could possibly claim, in the property.—1 Perry on Trusts, §§ 124 et seq.; *Tilford v. Torrey*, 53 Ala. 120; *Lehman, Durr & Co. v. Lewis*, 62 Ala. 129.

This essential fact—payment by one with conveyance to another—is wholly lacking in the averments of this bill, as we construe them. Mrs. Lewis paid the money, and in consideration of this payment she herself, and not Dixon H. Lewis, and not Cox, received and became invested with every possible interest in the land to which the payment made could have entitled her—an inchoate equity which she had a right to perfect by meeting the deferred payments ac-

[Lewis et al. v. Mohr.]

cording to the terms of the contract. This interest she had a right to sell and did sell to Cox and received from him one-half the consideration therefor in money, the other half being secured to her by a lien on the land secondary to the mortgage executed by Cox. No right, title or interest which enured to or vested in Cox was paid for by Mrs. Lewis, except her inchoate equity which she sold to him and for which he become liable to her. No money of hers constituted in whole or in any part the cash payment made by Cox. To the contrary she received from Cox an amount equal to the cash payment made by her on the whole tract to Metcalf; and to now declare and enforce a resulting trust in favor of her heirs would involve the intolerable anomaly of double payment of the same claim to her in her lifetime by Cox, to them now by Mohr who claims the land through Cox. And the anomaly is not relieved in this connection if it be considered, as is perhaps probable, though not so alleged in the bill, that this cash payment by Cox was made to Metcalf on his claim for the deferred instalments of the purchase-money for the whole tract. This was as much a payment to Mrs. Lewis, as if she had personally received the money, and it may be for aught that appears to the contrary that she was thereby enabled to pay the purchase-money in full to Metcalf, and that these complainants now have the fee in the 600 acres of land remaining after the sale to Cox. But whether this be true or not, the character of the payment, if it was made to Metcalf, remains the same; it was a payment for Mrs. Lewis, and to her in the sense of releasing her land to the extent of it from the vendor's lien.

Our conclusion on this part of the case is that no trust resulted to Mrs. Lewis, on the facts averred, and that the bill in this respect is insufficient to authorize the relief prayed. It may be that the real facts will admit of the bill being so amended as to negative the concurrence of Mrs. Lewis in the purchase from Metcalf and sale to Cox by her husband, and if so the objection taken by the assignments of demurrer under consideration may be obviated.

The point we have been considering was not involved in the case of *Lewis v. Montgomery Mutual Building & Loan Association*, 70 Ala. 276. The bill in that case did not seek the establishment of a resulting trust in Mrs. Lewis' favor, and hence what is there said that "there may be no doubt that a resulting trust, in favor of Mrs. Lewis was created by the payment by her father of one-third of the purchase-money, for and as an advancement to her," is the merest

*dictum.* And moreover it appears to have been made upon the assumption that Metcalf's bond for title contained no covenant for title to Mrs. Lewis, and it is said that had it contained this covenant the effect might have been to vest in her the inchoate equity arising from the purchase. According to the averments of the present bill, as we have felt constrained to construe them, the bond in question did contain this covenant, and of consequence, taking this with the other averments as to the capacity in which Dixon H. Lewis acted in the premises, her inchoate equity in the land, and not the right to recover her funds out of it by enforcing a resulting trust, vested in Mrs. Lewis, and became a part of her statutory separate estate.

It further appears by the bill that after the right now asserted by the heirs of Mrs. Lewis, had accrued to her the land in question was successively sold and conveyed to Cox, the Building & Loan Association, and the respondent Mohr. It is admitted that if either of these vendees purchased without notice, actual or constructive, of the claim of Mrs. Lewis—there being no question that each of them paid value—the relief prayed can not be granted. The bill contains no averment that either of these purchasers had knowledge of Mrs. Lewis' claim, or of facts which should have put them on inquiry in respect thereto, which, if prosecuted would have led to knowledge of its existence and character. A demurrer was laid against the absence of averment in this respect, and was, in our opinion properly sustained. The fact that these parties were purchasers for value being alleged, it was upon the complainant to further allege that they had notice of the equities upon which reliance is now had for relief. This is demonstrable by reference to the rule which obtains in respect of the *onus* of proof on the issue of notice *vel non* in such cases. The party relying on the defense of a *bona fide* purchase for value and without notice need only prove that he is a purchaser for value, and thereupon it rests with the complainant to show that he had notice of adverse equities and of consequence bought in subordination to them.—*Craft v. Russell,* 67 Ala. 9; *Taylor v. Association,* 68 Ala. 229; *Creswell v. Jones,* 68 Ala. 420; *Barton v. Barton,* 75 Ala. 400; *Hodges v. Winston,* 95 Ala. 514. Now the facts, viz: the purchase and payment of value, which ordinarily the respondent would have to prove to make good the defense we are considering, are alleged in this bill; while the facts which the complainant would have to prove to overturn the *prima facie* defense resting on purchase and payment are not alleged

in the bill, and hence no evidence could be offered to sustain them. In other words the bill itself makes out *prima facie* the defense of *bona fide* purchaser for value without notice, and it contains no averment under which evidence would be admissible to rebut the defense thus stated. The bill as now framed in this regard is, therefore, without equity as on the facts averred there arises a *prima facie* presumption that the respondent Mohr and the prior purchasers through whom he claims had no notice of Mrs. Lewis' equity, and no averment is made under which evidence could be received to rebut this presumption. This conclusion is not intended to impugn the doctrine that where a defendant or respondent is put to a plea of *bona fide* purchaser for value, the fact not being alleged in the complaint or bill, the plea should negative notice.

The remaining assignments of demurrer are not well taken. The decree of the Chancery Court is affirmed.