# Nelson *et al.* Ex'rs. *v.* Owen.

*Bill in Equity to Compel Restoration of Stock Pledged for a Debt.*

1. *Unauthorized disposition of pledge; when relief can be granted by court of equity.*—When a pledgeé by an unauthorized sale or other unauthorized disposition converts the pledge, the pledgor, upon paying or tendering payment, of the debt, can obtain adequate relief in an action of trover for the conversion, which fact excludes the jurisdiction of a court of equity; but, if the pledgee is insolvent and has transferred the pledge to another who resides without the State, a court of equity will intervene for the relief of the pledgor, and upon proper bill filed compel a restoration of the pledge.

2. *Same ; bona fide holder of pledge ; necessity of averment negativing such holding in bill to compel restoration of pledge.*—In a bill filed by a pledgor to compel the restoration of the pledge, which was held by one to whom it was transferred from the original pledgee, which contains no allegation as to the consideration upon which the defendant acquired the stock, or the manner of its acquisition, is not defective because it does not negative a *bona fide* purchase thereof by the defendant; since, in such case, the defense of a *bona fide* purchaser must be raised by plea or by the answer.

3. *Transfer of stock in a corporation; what necessary to constitute a bona fide purchaser.*—One who, in acquiring a certificate of stock in a corporation from another who is the apparent owner, having the muniment of title and other indicia of ownership of which the property is capable, gives value therefor or yields up an existing right, or changes his condition for one worse, trusting to the apparent ownership of the person from whom he purchases, is a *bona fide* purchaser, entitled to protection against a prior right of the original owner who had pledged said stock with his vendor.

4. *Same; rights of bona fide purchaser; estoppel.*—The original owner of a certificate of stock in a corporation, who, in pledging it as collateral security for a debt signs a blank form of assignment thereon, which expressed a valuable consideration and included an irrevocable power of attorney authorizing a transfer to be made on the books of the company, is estopped to assert title thereto as against a *bona fide* purchaser without notice from the pledgee, and from claiming that the same was given as collateral security for a debt, notwithstanding the debt for which it was given has been paid by the owner; and this rule is not changed by section 1784 of the Code of 1886, since that applies to the parties to the pledge, and those dealing with it upon no-

[Nelson *et al.* Ex'rs. v. Owen.]

tice; nor does it involve the right of the true owner to reclaim or recover damages for the conversion of stock lost or stolen without laches on his part.—(*East Birmingham Land Co. v. Dennis*, 85 Ala. 565, distinguished.)

APPEAL from the Chancery Court of Jefferson.

Heard before the Hon. THOMAS COBBS.

The bill in this case was filed on March 3, 1894, by Charles N. Owen, the appellee, against the appellants, who were executors of the last will and testament of Charles Nelson, and others, to recover title to 48 shares of stock in the North Birmingham Land Company, represented by certificate A—296, or, in lieu thereof, to have another certificate issued to him by said North Birmingham Land Company.

The bill alleges that said certificate was in the name of said C. N. Owen and was delivered to W. E. Berry, endorsed in blank, to secure a loan of $600, and a further loan of $200, obtained thereafter, each evidenced by promissory notes of Owen to Berry; that said Berry before the maturity of the debt separated the collateral from the debt and transferred and delivered said certificate to B. F. Perkins, and B. F. Perkins thereafter transferred said certificate to Chas. Nelson, as collateral security for a debt due by Perkins to Nelson; that Nelson had since died and that William Nelson, J. H. Brengleman and the Nashville Trust Company were the executors of his last will and testament; that said Owen had paid up the entire debt due said Berry and made demand on said Berry for said stock, and also made demand on the North Birmingham Land Company for the issuance of a new certificate in lieu of the original one; that said Berry is insolvent.

Berry, Perkins, North Birmingham Land Company and the executors of Chas. Nelson, deceased, were made parties defendant to the bill. The prayer of the bill was that the complainant be decreed to have a full and complete legal title to the said 48 shares of stock, and that the certificate for said stock so pledged by him be required to be delivered up with proper transfers on the same, or, in lieu thereof, that another certificate be issued to him by said corporation, and for general relief.

There were several demurrers interposed to the bill, the grounds of which are sufficiently stated in the first paragraph of the opinion. The demurrers were over-

ruled and decree *pro confesso* entered against all the defendants, except the executors of Charles Nelson, deceased.

The answer of the executors, in effect, denies that the transfer to Perkins and Nelson was made without the consent of said Berry, and also sets up that by reason of said certificate of stock being indorsed for value in blank by said Owen, and all the rights of ownership thereby conferred on the holder thereof by Owen, and the said Charles Nelson becoming the transferee for value without notice of any right to complainant or infirmity in the title of said Owen, said Owen was estopped to deny the right of Berry and Perkins to dispose of said stock as his own. The other facts of the case are sufficiently stated in the opinion.

On the final submission of the cause, on the pleadings and proof, the chancellor decreed that the complainant was entitled to the relief prayed for, and ordered accordingly. From this decree the executors of the last will and testament of Charles Nelson, deceased, appeal, and assign the rendition thereof as error.

MOUNTJOY & TOMLINSON and GARRETT & UNDERWOOD, for appellants.—Pledgee could not, prior to enactment of section 1784, bring trover or detinue until he has paid debt.

Where the owner confers all the indicia of ownership on transferee, who holds as collateral, he cannot claim against an innocent purchaser for value without notice. Cook on Stocks, Stockholders and Corporation Law, p. 473 ; *Saltus v. Everett*, 20 Wend. 267 ; *New York & New Haven, R. R. v. Schuyler*, 34 N. Y. 80 ; *Winter v. Mining Company*, 53 Cal. 428 ; *Turnpike Co. v. Ferree*, 17 N. J. Eq. 117 ; *Weaver v. Barden*, 49 N. Y. 286 ; *Winter v. Montgomery Gas-Light Co.*, 89 Ala. 544 ; *Prall v. Tilt*, 28 N. J. Eq. 479 ; *McNeil v. Tenth National Bk.*, 46 N. Y. 325 ; *East Birmingham Land Company v. Dennis*, 85 Ala. 565.

As said by Mr. Cook : "By a commercial usage, which has been repeatedly recognized as valid by the courts, certificates of stock may be assigned by a transfer duly signed by the transferrer, but with the name of the transferee left blank. Generally the combined instrument of transfer and power of attorney on the back

[Nelson *et al.* Ex'rs. v. Owen.]

of the certificate is signed by the stockholder and delivered to the purchaser, with the names of the transferee and the attorney left blank."—*McNeil v. Bank*, 46 N. Y. 325; *Mount Holly, &c. Turnpike Co. v. Terree*, 17 N. J. Eq. 117; Cook on Stocks, Stockholders and Corporation Law, § 441. Under this principle which is sustained by the weight of authority, the transfer in blank gave to the transferee the right to the stock.— *Com. Bank v. Kartright*, 22 Wend. 362; *Turnpike Co. v. Turree*, 17 N. J. Eq. 117; Cook on Stocks, Stockholders and Corporation Law, §§ 380, 441.

HOUGHTON & COLLIER, *contra.*—1. The contention of complainant is, that he is entitled to a decree compelling the North Birmingham Land Company to issue a certificate for two reasons : 1. When Berry separated the stock collateral from the debt, the title to the stock at once vested in him, free from any claim on the part of Berry or any transferee. 2. The original debt for which the stock was pledged as collateral, having been paid in full by Owen, the stock became his, free from any lien. Section 1784 of the Code of 1886, provides that a transfer of property pledged, not accompanied by a transfer of the debt, is a discharge of the pledge restoring the right or title of the person from whom it was received. The undisputed evidence of Berry, a witness for the defendants, shows that on the same day that he obtained the stock from complainant, he transferred it to Perkins without transferring the debt, so that the title to the stock has never been out of complainant, but a few hours of one day. This section of the Code is so plain that it needs no construction. The court construed it to mean what it says when it overruled defendants' demurrers, and since that time the Supreme Court of Alabama has given it the same construction in the case of *Pollak v. Janney*, 100 Ala. 561. But the complainant has, on the undisputed testimony, established his right to the stock by a payment of the debt, which of course discharged any lien acquired by the pledge. *East Birmingham L. Co. v. Dennis*, 85 Ala. 565; *Murray v. Ballou*, 1 Johns. Ch. 566; *Bolling v. Carter*, 9 Ala. 921.

"The true owner of stock may compel the corporation to place his name on the stock book, and also to issue to him a certificate of stock to which he is entitled." *Birmingham Nat. Bank v. Roden*, 97 Ala. 404,

BRICKELL, C. J.—Three of the causes of demurrer to the bill, are founded on the ground, that for the conversion of the stock, the complainant had an adequate remedy at law; the essence of the remaining causes, is, that the bill should by proper averments have negatived the right and equity of Perkins and of Nelson, to protection as *bona fide* purchasers of the stock.

When a pledgee by an unauthorized sale, or other unauthorized disposition, converts the pledge, the pledgor upon paying or tendering payment of the debt, may maintain trover for the conversion, and. this remedy is generally deemed adequate, excluding all necessity for the interference of a court of equity.—Jones on Pledges, § 556, *et seq*. Exceptional cases may occur, in which this remedy is inadequate, and a court of equity will intervene for the protection and relief of the pledgor. It is said by Judge Story: "Generally speaking, a bill in equity to redeem will not lie on the behalf of the pledgor or his representative, as his remedy, upon a tender, is at law. But if any special ground is shown, as if an account or a discovery is wanted, or there has been an assignment of the pledge, a bill will lie."—2 Story Eq., § 1032. And in Jones on Pledges, section 557, it is said: "A bill in equity may be maintained to redeem a pledge, if an account is wanted, or if there has been an assignment of the pledge, notwithstanding the pledgor has a remedy at law, in an action of trover." With much of closeness, this court has adhered to the doctrine, that where rights are legal, and courts of law may proceed to a judgment which will afford complete justice and full protection to the parties, courts of equity will not intervene. When, however, there is in the particular case, something exceptional, some peculiar fact or circumstance, rendering the remedy at law inadequate, equity will intervene, that complete justice may be done and full protection afforded to the parties. Whether adherence to this doctrine, would require that a court of equity should decline jurisdiction to compel specific delivery of a pledge, on the ground that a relation of trust and confidence exists between pledgor and pledgee, it is not now necessary to consider. The facts of this case, as alleged in the bill, and to them our decision must be limited, are exceptional and furnish special ground for the interference of a court of equity. The pledgee,

[Nelson *et al.* Ex'rs. v. Owen.]

Berry, is insolvent, and the insolvency renders unavailing a recovery of damages at law against him, for the conversion of the stock. The personal representatives of Nelson who have succeeded to the possession of the certificate of stock, reside without the State, and as against them, ordinary legal remedies can not be pursued. These concurring facts, present a case in which a court of equity may, and ought to intervene for the relief of the pledgor, compelling a restoration of the certificate of stock, which, in the hands of strangers, casts a cloud on his title, and may involve him in litigation with the corporation.—*Hasbrouck v. Vandervoort*, 4 Sandford, (Sup. Ct.), 74; *White Mt. R. R. Co. v. Bay State Iron Co.*, 50 N. H. 57; *Pollak v. Janney*, 100 Ala. 561.

If it appeared clearly on the face of the bill, that Nelson acquired the stock in good faith and for a valuable consideration, without notice of the right the complainant asserts, it may be, a demurrer would be entertained; or, if it appeared that Nelson acquired the stock upon a fair and valuable consideration, in the usual course of business, the want of averment that he had notice of the right of the complainant, it may be, would render the bill demurrable.—Story Eq. Pl., § 603; 2 Lead. Eq. Cases, (Pt. 1), 24; *Lewis v. Mohr*, 97 Ala. 366. But the bill is without these averments; it is silent as to the consideration upon which Nelson acquired the stock, or the manner of acquisition. The defense of a *bona fide* purchaser, in this state of case, can be made available only by plea or answer; and whether made in the one mode or the other, it is essential that notice, though not averred in the bill, be denied.—2 Lead. Eq. Cases, (Pt. 1), 25; *Moore v. Clay*, 7 Ala. 742; *Johnson v. Toulmin*, 18 Ala. 50; *DeVandal v. Malone*, 25 Ala. 273. There was no error in overruling the demurrer and the motion to dismiss the bill for want of equity.

The questions on which the real merits of the controversy depend, are of great practical importance to the owner of shares of stock in corporations, and to all who deal in them, either as purchasers, or in the acceptance of them as security for the payment of debts. In view of the prevailing current of authority, these questions are not of difficult solution, and do not require extended discussion. Briefly stated, the material, controlling facts are, that Owen was the owner of forty-eight shares

[Nelson *et al.* Ex'rs. v. Owen.]

of the capital stock of the North Birmingham Land Company, a corporation organized and existing under the laws of this State, having its domicile in the city of Birmingham. The company had issued to Owen, a certificate, in the customary form of such certificates, of ownership of the stock. On the 4th day of October, 1890, he borrowed five hundred dollars from, or through the agency of, one Berry, a broker doing business in Birmingham, making his promissory note for the payment thereof at ninety days, pledging the certificate of stock as collateral security. On the back of the certificate, was the form of an assignment or transfer, expressing to be made in consideration of value received, including an irrevocable power of attorney, authorizing a transfer to be made on the books of the company. As to date, the name of the assignee or transferee, and of the attorney, the form was in blank. At the time of the delivery of the certificate to Berry, Owen signed, or had previously signed, this form, and his signature was attested by a subscribing witness. Subsequently, it does not clearly appear upon what consideration, or for what purpose, Berry delivered the certificate to one Perkins, by whom, with the assent of Berry, it was pledged to the Birmingham National Bank, to secure payment of one thousand dollars presently loaned. Perkins was indebted in a sum of money exceeding twelve hundred dollars to Charles Nelson of Nashville, Tennessee, and one Brengleman was the agent for the collection or securing payment of the debt. In the course of an interview with Brengleman, Perkins said he was without ready money, but had this certificate of stock in pledge to the Birmingham National Bank. The result of the interview, was an agreement that Brengleman should pay the debt to the bank, redeeming the stock, and extend the time of payment of the debt due Nelson, taking the certificate stock, as collateral security for the payment of the original debt, and for the money advanced to the bank. The money was paid to the bank, and nine notes maturing at different times in the future, for the payment of the aggregate indebtedness were taken ; and the certificate of stock delivered to Brengleman, as collateral security for their payment. Owen paid the debt to Berry for which he originally pledged the stock and several times demanded of him the return of the certificate.

[Nelson *et al.* Ex'rs. v. Owen.]

There is no evidence that the National Bank, or that Brengleman, or Nelson, had any notice or knowledge of the transaction between Owen and Berry; or that Owen had not parted with title to the stock, absolutely and unconditionally.

The shares constituting the stock of a corporation, are now regarded by the common law, whether the property owned by the corporation is real or personal, as personal property, capable of alienation or succession, in any of the modes by which that species of property may be transferred or transmitted. Strictly speaking, they are not chattels, but are rather *choses in action*—"or, in other words, they are merely evidence of property." Ang. & Ames, Corporations, §§ 557-60; 1 Cook, Stocks & Stockhelders, § 12; 1 Thompson, Corporations, §§ 1066-70. Statutes may, and not infrequently do, declare them personal property; but if a larger legislative intent is not apparent, such statutes are construed as merely declaratory of the known rule of the common law. As evidence of ownership—as a muniment of title—corporations are accustomed to issue certificates to the shareholders. The certificate is but "the written acknowledgment by the corporation of the interest of the shareholder in the corporate property and franchises; it operates to transfer nothing from the corporation to the shareholder, but merely affords to the latter evidence of his rights."—1 Cook, Stocks & Stockholders, § 14. Upon principle and authority, it is manifest, the certificate has not in it the elements and characteristics of negotiable or commercial paper; it is not evidence of debt; it is not a promise to pay, nor an order for the payment of money; it is but a muniment of title. While this is true, a species of negotiability, or to employ the usual phrase, sufficiently expressive for all practical purposes, a *quasi* negotiability attaches to it, adding to its value. And if the owner, in any form, clothes another with the apparent title and the consequent power of disposition, inducing third persons to deal with him as owner, such persons are entitled to full protection; to the same measure of protection extended to the *bona fide* taker of negotiable or commercial paper.—2 Thompson, Corporations, §§ 2589, *et seq*; 1 Cook, Stocks & Stockholders, §§ 411-16; Jones on Pledges, §§ 134, 136, 466; Colebrook on Collateral Securities, §§ 437-39.

The judicial decisions supporting this doctrine, now of general recognition in this country, are referred to in these authorities, and a citation of them is not necessary. In *McNeil v. Tenth National Bank*, 46 N. Y. 325, s. c. 7 Am. Rep. 341, (which we may remark, is not distinguishable from the case before us), it was said: "It must be conceded that as a general rule, applicable to property other than negotiable securities, the vendor or pledgor can convey no greater right or title than he has. But this is a truism, predicable of a simple transfer from one party to another where no other element intervenes. It does not interfere with the established principle, that where the true owner holds out another, or allows him to appear, as the owner of or as having full power of disposition over the property, and innocent third parties are thus led into dealing with him as apparent owner, they will be protected. Their rights in such cases do not depend on the actual title or authority of the party with whom they deal directly, but are derived from the act of the real owner, which precludes him from disputing, as against them, the existence of the title or power which through negligence or mistaken confidence, he caused or allowed to appear to be vested in the party making the conveyance." The doctrine was recognized in *East Birmingham Land Co. v. Dennis*, 85 Ala. 565.

Voluntarily, Owen delivered the certificate to Berry, accompanied by a transfer and an irrevocable power of attorney authorizing transfers on the books of the company. The transfer in the particulars which have been mentioned was in blank, and doubtless purposely left in blank, to facilitate the use of the certificate. The presence of the blanks, imported authority to fill them by any holder of the certificate desiring a transfer on the books of the company. It is rather difficult, on the facts of the case, to resist the conclusion that a transfer of the certificate by Berry, was contemplated. However that may be, Owen is estopped from a denial of Berry's ownership of the stock and authority to dispose of it by sale or pledge, as against third persons succeeding to the possession of the certificate, dealing in good faith and for value. If Berry has betrayed trust and confidence reposed in him, and loss or injury results, Owen had full opportunity to protect himself by a declaration in the transfer of the purpose for which it was made. Not

having taken care to protect himself ; not expressing in the writing the real character of the transaction between him and Berry as he now asserts it to have been, there is nothing of right or justice in the effort to visit loss on strangers who trusted to the truth of the writing, and all that it naturally and logically imports.

A *bona fide* purchaser, entitled to protection against the prior right of the pledgor, is one who gives value, or yields up an existing right, or changes his condition for the worse, trusting to the apparent ownership the pledgor has created.—*Mobile Life Ins. Co. v. Randall*, 71 Ala. 220. It is not contended that the Birmingham National Bank and Nelson were not purchasers of the stock upon a fair and valuable consideration, in the ordinary, usual course of business, without notice of the transaction between Owen and Berry, or that there was any infirmity in the apparent title to the stock. The taking of certificates of corporate stock in payment, or as collateral security for the payment, of debts, is a frequent business transaction. The bank loaned money, taking the certificate as collateral security ; the loan and pledge were contemporaneous and concurrent. Nelson redeemed it from the bank, and in consideration of its pledge to him, gave time for the payment of the money advanced in redemption and of the antecedent debt due him. The bank gave value in the loan of the money ; Nelson gave value in advancing the money to redeem the stock, in yielding up his existing right to demand payment of the debt due him, and in extending the day of payment of the aggregate indebtedness ; each is entitled to protection as a *bona fide* purchaser. These transactions were had with the apparent owner, having the muniment of title, and every visible indicia of ownership, of which the stock was capable. Without opening the way for fraud and dishonesty, transactions of this character cannot be undone, at the instance of a party, who, by his own conduct, induces them.

We do not perceive the force of the contention, that section 1784 of the Code infringes upon or abrogates the general rule of law estopping the pledgor from asserttitle against a purchaser from, or the pledgee of, the apparent owner. The section forms part of a chapter of the Code devoted to "Collateral Securities ; Pledges," and must be read and construed in connection with the

[Nelson *et al.* Ex'rs. v. Owen.]

other sections constituting the chapter. The primary intent of the chapter, is, to define and declare the rights and duties of pledgor and pledgee—of the giver and taker of collateral security—as between themselves; there is no purpose manifested to define the intervening rights of third persons, dealing with either. It may be conceded, that under the influence of this section, when Berry parted with the stock, separating it from the debt, Owen, without payment, or tender of payment of the debt, could have maintained trover against him for a conversion of the stock; or could have maintained the like action, against one taking the stock with notice of the pledge. This question is not before us, and we need not, and do not decide it. The question now presented is essentially different and readily distinguishable. The separation of the pledge and debt was in exercise of the dominion, the apparent ownership with which Owen clothed Berry, as was the disposition of the pledge by Berry. The title *bona fide* purchasers have acquired, relying upon the apparent ownership with which Berry was clothed, is the title Owen is estopped from denying. By no act of Berry's, or of Owen's, could the estoppel be removed, or the rights of such purchasers be affected. General as may be the words of the statute, they must be read and construed in the light of the common law, and must not be regarded as infringing upon its rules and principles, save so far as may be expressed, or fairly implied to give them full operation.—*Scaife v. Stovall*, 67 Ala. 237. Discussing a question not wholly dissimilar, it was said in *Shaw v. Railroad Co.*, 101 U. S. 565: "No statute is to be construed as altering the common law further than its terms import. It is not to be construed as making any innovation upon the common law which it does not fairly express." A construction of the statute, as operating an abrogation of the salutary, conservative principle of the common law, estopping as against *bona fide* purchasers, the owner of personal property, who has parted with all the *indicia* of ownership, clothing another with it, enabling him to deal with it as owner, would be repugnant to all known rules of statutory construction. It is quite an error to suppose there is anything said or decided in *Pollak v. Janney*, 100 Ala. 561, contrary to this view. Judicial

decisions must be read in the light of the facts on which they are based, and in that case, the court was passing on the rights of the parties to the original transaction ; the rights of third persons dealing in good faith with either of the parties, were not involved, and in reference to them there was no expression of opinion.

It is scarcely necessary, but from abundant caution it may be proper to say, the case does not involve the right of the true owner to reclaim, or to recover damages for the conversion of a certificate of stock, which, without *laches* on his part, he may have lost, or may have been stolen from him. That question was considered and decided in *East Birmingham Land Co. v. Dennis*, 85 Ala. 565. In such cases, the true owner does not voluntarily and intentionally clothe another with the *indicia* of ownership and the power of disposition, inducing dealings with him as if he were the real owner.

The decree of the chancellor is not in accord with the view we have expressed, and it must be reversed, and a decree rendered dismissing the bill. The appellee must pay the costs in this court, and in the court of chancery.

Reversed and rendered.